480 A.2d 1214

**COMMONWEALTH of Pennsylvania**

v.

**Thomas J. FLEMING, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 1984.

Filed Aug. 3, 1984.

Petition for Allowance of Appeal Denied Jan. 9, 1985.

Gary K. Schonthaler, Erie, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order[1] of the Court of Common Pleas of Erie County sentencing the appellant, Thomas J. Fleming, to a term of 10 to 20 years for robbery. We affirm.

Because of the unusual nature of the case at bar, a detailed accounting is necessary to appreciate the ruling entered herein. Following the issuance of a warrant for the appellant and his subsequent arrest as a result thereof, a preliminary hearing was conducted before District Justice Sophie Hogan on May 13, 1980. On the face of the sheet (captioned "Docket Transcript") filed with the Court of Common Pleas of Erie County by the District Justice appear the typed names of the Commonwealth's witnesses

---

1. We note that all parties erroneously label the instant appeal as one taken from the Order of May 17, 1982, instead of from the Judgment of Sentence which, in actuality, was imposed on the date just stated. *See Commonwealth v. Smith*, 322 Pa.Super. 389, 469 A.2d 676 (1983). Nonetheless, despite the improper caption, we see no need to remand for a rectification of this procedural misstep that, given the facts, is of no real consequence.

who "testified" at the proceeding (i.e., Raymond Fitzgerald, Marie Phillips, Dora Magee and Marbara [sic] Ann Debberry [sic]), and the fact that "defense persons [were so] notified" of the witnesses. Also, in the space next to the block with the caption "Attorney For Defendant" appears the typed name of "D. Watson". Counsel, a public defender, was requested by the appellant on May 7, 1980 after he was advised by the District Justice of his right to apply for assignment of counsel.

On June 4, 1980, defense attorney T. Dana Watson filed an Omnibus Pretrial Motion alleging that "[a]t the preliminary hearing on both charges[ ] various Commonwealth witnesses made an identification of the Defendant in the Courtroom[,]" which he claimed was tainted by an "inaccurate, unreasonable, and unjust" photographic array. The motion was never ruled upon since the appellant failed to appear for the September 1980 Term of Court. A bench warrant was issued on October 7, 1980, appellant was extradicted to this Commonwealth from California and his case was added to the July 1981 Term of Criminal Court.

On July 10, 1981, the appellant, through Attorney Watson, filed an application for a continuance "to retain outside private counsel ... [and] further time ... to prepare his defense[.]" (N.T. 7/10/81 at 3) Appellant sought to have his case postponed until November. The court refused to do so, being that it was the District Attorney's office that set the scheduling of cases, and the matter was continued until the next term, i.e., September of 1981, in an effort to accommodate both of appellant's requests.

By September 15, 1981, the appellant had failed to secure counsel, giving as a reason at a second continuance hearing that "they want so much money, so much money." (N.T. 9/10/81 at 3) However, he "guaranteed" the court that if he were granted another continuance until November he would be ready to go to trial. As a compromise, the court informed the appellant that the case would be extended until the October Term of Court. If the appellant was serious about securing counsel he surely could hire one by

that time, and if the appellant failed to obtain counsel by the date stated, the court advised him that, nevertheless, the case would be tried during the October Term. The appellant acknowledged the court's requirement that he make a "sincere effort to get an attorney." (N.T. 9/10/81 at 4)

Shortly thereafter, on September 14, 1981, appellant admitted his difficulty in raising money and asked the court to appoint counsel for him. During the course of the hearing on the matter, counsel for the Commonwealth remarked that there "was some ambiguity about whether Mr. Watson still represent[ed] Mr. Fleming or not because, frankly, Mr. Watson as little as two weeks ago was attempting to plea bargain the case on Mr. Fleming's behalf." (N.T. 9/15/81 at 5) Appellant retorted that he had not asked for Watson, but, supposedly, Watson was listed to represent the appellant and out of concern for the accused did not want him to go to court without representation. Thus, according to the appellant, Watson "brought these suggestions to [him] as far as pleading guilty." (N.T. 9/15/81 at 6) Nevertheless, the appellant still wanted the opportunity to hire a private attorney and agreed that, if he could not do so, he would "request the public defender[.]" (N.T. 9/15/81 at 9) Before the court consented to a continuance until the *November Term of Court*, it impressed upon the appellant the seriousness of the charges and his obligation to act with alacrity in locating counsel because the Commonwealth, which was prepared to try the accused since he "absconded the jurisdiction," had "a right to proceed with this case at some point" and not have to summon witnesses only to send them home because the appellant was not ready to proceed.

Again, the appellant stated that "come November, [he] w[ould] be ready" even if it meant that counsel from the public defender's office would have to handle the case.

The court cautioned the appellant that the continuance was being granted, "but with the understanding ... that [he was] going to trial in November." Appellant agreed.

In point of fact, the record reveals a form document with the legend "Defendant's Statement of Understanding of Rights Prior to Guilty Plea." It was signed by the appellant, dated November 16, 1981 and indicated the entry of a plea to the robbery only—the firearms offense lodged against the accused was *nol prossed.* Private counsel (Jay Nedell) represented the appellant. However, after a hearing on January 29, 1982 the plea was withdrawn.

It appears from the record that on February 10, 1982 the appellant requested his private counsel to cease representing him and asked for a public defender. Counsel from the public defender's office (Kenneth A. Zak) did appear with the appellant at a motion to dismiss per Pa.R.Crim.P. 1100. Thereafter, this same attorney filed a motion seeking leave to withdraw on the ground that, *inter alia:*

7. It is the policy of the Public Defender's Office to refuse representation to an individual who has requested the termination of Public Defender representation in the past in the same case.... This position has been the policy of the Public Defender even in cases where defendant has "fired" his public defender and has retained private counsel in the interrim [sic] prior to requesting a public defender later.

8. It is also the policy of the Public Defender to request a formal application of a defendant prior to the assigning of a public defender. That did not take place in this case.

9. ... Defendant terminated his representation by Attorney Watson. In discharging Attorney Watson defendant discharged the Public Defender's Office as a firm and should not be permitted to obtain the representation of a different member of the Public Defender's staff.

10. While counsel has indeed entered an appearance in this matter, it is submitted that the withdrawal should be permitted in the interests of not only the Public Defender's Office but the administration of justice by this Court.

The motion to withdraw was denied February 11, 1982.

The scenario continues with a proceeding before the Hon. Richard L. Nygaard on February 16, 1982. At that time,

the appellant, with Attorney Watson present, desired a 2-week continuance to obtain counsel other than Watson. The court noted that Attorney Zak was appointed, but because of the Public Defender's policy against "judge-shopping," the first attorney, i.e., Watson, assigned out of that office was present to handle the litigation. Appellant objected, claiming that Watson's removal in April of 1981 because of a conflict should foreclose the court from "forc[ing]" him upon the accused. On the other hand, the Commonwealth was "ready to proceed" and felt that any continuance would merely prolong an already protracted case without any assurances that the matter would not be postponed at the March Term.

Appellant related that he did not continue the case with prior, private counsel because counsel "asked to be dismissed from the case" and "kept going out in the hallway, three times, and consulted with the [assistant] district attorney ...." (N.T. 12/16/82 at 6)

The court conceded that the appellant had the right to "effective" counsel, but not to the right to choose personally counsel from the public defender's office. After the Commonwealth acknowledged that it was ready to proceed and all of its witnesses were present, the court remarked:

Well, this puts the Court in a bind, but it's not a bind of our making and it's not a bind of the Commonwealth's making, it's a bind of your [appellant's] own making. You've come with attorneys before and you've come now after having withdrawn your guilty plea, you've worked with an attorney for a period of time then dismissed him just prior to trial term. I'm not going to continue it. We are going to go to trial. You had best work with your attorney here who has extensive criminal court experience, and whose stewardship in the course of a trial is diligent. I would suggest that you work with him. If you do not, the best he can do for you is to offer you advice if you ask it. But we will go to trial. (N.T. 2/16/82 at 6–7)

Despite the appellant's protestation to the contrary, the court reaffirmed its decision to have the trial commence. Counsel from the public defender's office responded in the following fashion:

MR. WATSON: Your Honor, I guess I'm at a loss to know exactly where we are in this case. I realize the Court has brought in a new panel of jurors. I have not yet entered an appearance on behalf of Mr. Fleming. I don't believe I can enter an appearance since he does not wish me to represent him. I'm not sure what is best here. I feel in fairness to Mr. Fleming and on my behalf, I feel there are certain remarks I would have to make. One, because of Mr. Fleming I withdrew at his request. Since that time I have spoken with him on one occasion from jail and it appeared I would be filling in temporarily or taking over for Mr. Zak. *I feel myself, I'm completely unprepared and incapable of representing him at this trial.* He asked me not to do that and, of course, I can not. I will be present with him to answer any questions he may have, but *Mr. Fleming himself has indicated he is not ready for trial,* partly because Mr. Zak was representing him which apparently was satisfactory to him and then there was a misunderstanding, I'm not sure what, occurred. *I think the only fair thing if I'm to actually represent him, I would clearly need a continuance of the case in order to prepare for the case, having no real preparation today.* I'm not sure I realize the Court has already heard the motion to postpone the matter to the March term, even though the Commonwealth witnesses are here, I would think we would be more likely to avoid difficulties here or on an appeal if we had a continuance, or otherwise tried to provide Mr. Fleming with the counsel that could adequately represent him. It's a circumstance I haven't been in before and I think in fairness to him something should be done to avoid lawyer shopping, maybe this is a case for an exception. I can't speak for the public defender.

(N.T. 2/16/82 at 7–8) (Emphases added)

Furthermore, Attorney Watson pleaded that he believed the appellant was not "deliberately delaying" the case because "as of the end of last week Mr. Fleming did think Mr. Zak would be representing him." (N.T. 2/16/82 at 9) The court discounted this argument and recalled how it informed the appellant that the only way it would permit private counsel to withdraw "was if there was another one who was ready to take his place and would go to trial this term." *Ibid.*

The court went on to explain that it was not only the appellant that had a right to a speedy trial, but the victim, the Commonwealth and the police department.

> We just can't go to trial only when the defendant wants to go to trial. So, I will deny your motion. This is an unusual case, I realize that, and that's why I went into that in so much detail when Mr. Fleming wanted to discharge Mr. Nedell because I've been there before and I'm not going to let that happen unless there's somebody to take his place, and this case shortly thereafter was called to trial. So, that's the situation, but we have to run with it. (N.T. 2/16/82 at 10)

Before the bar of the court, Attorney Watson elicited from the appellant responses which indicated that neither the accused nor he, at the appellant's insistence, would *actively* participate in the trial. Voir dire examination by the attorney for the Commonwealth followed. Attorney Watson's involvement in this process was minimal, in that he did no more than request that the next prospective juror be called and questioned to determine his/her qualifications after an individual had been selected to serve. At the completion of the jury selection, Attorney Watson informed the court that:

> Your Honor, Mr. Fleming has asked me to request an opportunity to confer with me and ask his trial be post-poned until this afternoon. It now being 11:00 and I'm asking he be given the opportunity to confer with me and I assume it's in regard to his defense or some other development in the case, I don't know.

THE COURT: I think it's a reasonable request. Why don't we start in at 1:30.

(N.T. 2/16/82 at 20)

After the noon recess, the prosecution informed the court that the appellant had agreed, in exchange for the Commonwealth's withdrawal of the firearm offense, to stipulate to the introduction of an FBI report of fingerprints in lieu of the agent's testimony. Also, the appellant, through Mr. Watson, informed the prosecution and the court that he wished to be tried non-jury for the robbery charge. Consequently, a colloquy was conducted by the assistant district attorney, and supplemented by the court's inquiry, which elicited from the appellant that his waiver was being implemented after having had an opportunity to consult with Attorney Watson. Further, before signing the "waiver of rights" sheet, the appellant read it over with Attorney Watson and acknowledged to the court that he had time to "discuss[ ] it with him." (N.T. 2/16/82 at 25)

Prior to the commencement of trial, Attorney Watson renewed appellant's motions for a continuance (to have "appointed . . . counsel of his choice"), a dismissal (pursuant to Pa.R.Crim.P. 1100) and the suppression of evidence. These were denied by the court. Lastly, Attorney Watson placed on the record appellant's continued wish that counsel refrain from participating or acting on his behalf at trial. Nonetheless, the court made it clear that Attorney Watson would sit at defense table and participate in the proceedings to the fullest extent permitted by his client. Counsel agreed to do so.

The first witness to testify for the Commonwealth was Marie Phillips, a cashier at Fitzgerald's Golden Dawn supermarket in Erie, Pennsylvania. The witness recalled that at approximately 8:30 p.m. on April 17, 1980, she was working at the checkout area of the store. She confirmed this through a photograph, to which Attorney Watson stated he had no objection to its admission.

Ms. Phillips went on to recount how an individual, later identified as the appellant, approached the counter and

spoke to her, at a distance of approximately 3 feet, concerning his purchase of a "beef jerky" with a dollar food stamp. After the item was placed on the counter, the cashier opened the drawer to make change for the sale and found that the appellant had placed his hand inside of the 50-cent compartment. When the witness tried to close the drawer, the appellant reached into his jacket, pulled out a revolver, placed it on the same spot on the register and said, "See here, you bitch, if you open your mouth I'll shoot you." (N.T. 2/16/82 at 32)

The appellant was no farther away than the width of the counter as Ms. Phillips looked at his unmasked face. She observed the appellant remove $230 from the register and she hollered, "What do you think you're doing." By this time, the manager/owner, Ray Fitzgerald, heard Ms. Phillips and exited his office to see the appellant, who was about 20 feet away, with a pistol in hand removing currency from the drawer. Mr. Fitzgerald armed himself and fired at the appellant as he was making his way out the front door. The shot shattered the glass in the door and caused the appellant to drop to the floor, leading Mr. Fitzgerald to think that the accused had been wounded. However, the appellant got up and pushed the stockboy, who was walking into the store, out of his way in making his escape. During this point in the incident, Mr. Fitzgerald continued firing his weapon as the appellant ran down the street.

The police were duly notified and were given a detailed description of the robber by Ms. Phillips. In fact, at trial both Ms. Phillips and Mr. Fitzgerald identified the appellant as the guilty party. (N.T. 2/16/82 at 33, 38–39)

The Commonwealth also introduced the testimony of Barb DeBarry, the secretary on duty at Doctor's Osteopathic Hospital on the night of the robbery, who admitted the appellant into the emergency room with a gunshot wound. When the police arrived on the scene, Detective Dennis Tobin was told by the appellant that he had been in a "crap game" and was robbed by a black male of a necklace and

money. He further stated that the alleged assailant shot him as he ran.

The detective was able to secure from the appellant his social security number and date of birth. This information coincided with the data provided on an FBI fingerprint card obtained by the Erie police after an analysis of the "beef jerky" wrapper left on the counter by the perpetrator. The prints were those of the appellant.

Lastly, the Commonwealth read into the record the testimony given by the appellant at a separate, unrelated trial in which he admitted, during questioning by his then counsel (Attorney Nedell), to the robbery of Fitzgerald's supermarket and sustaining a gunshot wound to his left shoulder during the incident. Neither Attorney Watson nor the appellant objected to the introduction of the aforementioned evidence.

However, after the close of the Commonwealth's case-in-chief, Attorney Watson did enter a demurrer on behalf of his client, as was requested by the appellant. Accordingly, at the completion of the case, the court found the appellant guilty as charged and advised him of his rights. Thereafter, (private) counsel unassociated with trial counsel was appointed. Post-trial motions were filed, sentence was imposed and a modification thereof was sought and denied. This appeal followed.

Counsel for the appellant challenges the trial court's denial of a continuance, which, he alleges, impaired appellant's right to the effective assistance of counsel. Also, the validity of the sentence is questioned.

In regard to the issue of the trial court's denial of appellant's request for a continuance sought on the day set for the commencement of the proceedings, and echoed by then assigned counsel from the public defender's office, we have stated:

> The allowance of continuances is largely a matter within the discretion of the lower court, and the denial of a continuance does not constitute reversible error unless

there is an abuse of discretion. *Commonwealth v. Kittrell,* 285 Pa.Super. 464, 427 A.2d 1380 (1981). The Supreme Court of the United States has said:

> [I]t is not every denial of a request for more time that violates due process even if the party ... is compelled to defend without counsel .... Contrariwise, *a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality ....* There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921, 931 (1963). (Emphasis in original) *Commonwealth v. Wolfe,* 301 Pa.Super. 187, 192, 447 A.2d 305, 308 (1982); *see also Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973).

■ In light of the aforesaid, a case-by-case approach is the method by which a claimed court's abuse of discretion in denying a defendant's request for a continuance is to be reviewed. In particular, we are to give attention to the "reasons presented to the trial judge at the time the request is denied." *Commonwealth v. Wolfe, supra.*

Instantly, appellant claims that because Attorney Watson "was totally unprepared for the trial," the denial of a continuance impaired his right to the "effective assistance of counsel." (Appellant's Brief at 18) A close scrutiny of the facts and applicable law will reveal the fallacy in appellant's contention.

Factually, we observe that the same attorney (Watson) who represented the appellant at trial was counsel of record at the preliminary hearing, and, obviously, heard the testimony of those same witnesses who appeared at both proceedings so as to render nugatory any contention that counsel was "unfamiliar" with the case. This aspect is reinforced by the fact that Attorney Watson filed a pre-trial

motion to suppress the identification procedure utilized by the authorities.

After the appellant "jumped bail" and was returned to this jurisdiction by means of extradition, he sought, and was granted, a continuance in July of 1981 until September of 1981 to secure private counsel and time to prepare his case. Attorney Watson was present at this hearing.

A second continuance was obtained by the appellant, without the aid of counsel, extending his trial date from September to October of 1981. Again, the appellant was in the throes of hiring an attorney and "guaranteed" the court that he would make a concerted effort to find one. However, by the 15th of September, 1981, the appellant had conceded to the court his inability to raise sufficient funds to hire counsel, yet he persisted in his desire to seek counsel of his choice and importuned the court to give him another chance. If he failed, he agreed to be represented by a public defender. The Commonwealth objected to any additional continuance, and noted that as far as it understood the situation Attorney Watson, "as little as two weeks" prior to the hearing, was still representing the appellant as evidenced by his efforts to strike a plea bargain for the accused. The appellant did not deny the occurrence of such an incident between himself and Attorney Watson. On the contrary, he admitted to being approached by counsel concerning the feasibility of pursuing such an avenue to bring the matter to a close. At this point, it requires mentioning that one would be hard-pressed to equate the presentation of a plea proposal by counsel who was "unfamiliar" with a case he sought to plea bargain.

In granting the third continuance until the November Term of 1981, the court did so with the admonition to the appellant that the Commonwealth could not be required to hold its case in abeyance, on a recurring basis, until he was "ready to proceed." Witnesses could not be summoned to court, indefinitely, and then told to go home. The system could not withstand a steady diet of procrastination and still

retain the image of impartiality in the administration of justice.

Between the date of the third continuance and appellant's trial a number of events occurred, i.e., 1) appellant hired and fired private counsel during a time when he withdrew a plea of guilty entered in November of 1981; and 2) appellant asked for and received a public defender (Attorney Zak) for a Rule 1100 hearing.

Although what transpired at the February 16, 1982 trial is reconstructed *supra*, nonetheless, we wish to highlight those facts which we believe reflect on the issue of trial counsel's competency. For example, it must be remembered that Attorney Watson's refrain that he was ill-prepared to defend the appellant *preceded* the court's allowance of a recess, *asked for by the appellant through counsel*, from 11:00 a.m. to 1:30 p.m. to afford the two the opportunity, as phrased by counsel, "to confer ... in regard to [appellant's] defense or some other development ...." (N.T. 2/16/82 at 20)

When the trial was reconvened, the Commonwealth informed the court that the parties had agreed that the appellant would not be charged with the firearm's offense in exchange for his stipulation to the entry into evidence of a report (i.e., a damaging FBI fingerprint profile of the appellant "lifted" from the "beef jerky" wrapper left in the supermarket by the robber) in lieu of testimony on the matter. Also, the appellant, through counsel, informed those present that he wished to be tried nonjury. A colloquy ensued in which the appellant acknowledged that his actions were being taken after having "had an opportunity to talk this over with Mr. Watson[.]" (N.T. 2/16/82 at 23) In fact, the waiver form was signed only after the appellant had read it over with Attorney Watson. Thereafter, Attorney Watson placed on the record, at appellant's request, a renewed motion for a continuance to have public defender Zak re-appointed as "counsel of his [appellant's] choice," along with a revived motion to suppress and a dismissal under Rule 1100. *However, interestingly enough, neither*

*counsel nor appellant voiced their objection to a continuation of the trial on the ground that counsel was "unprepared" to defend against the charge.* All motions were denied and the trial proceeded with Attorney Watson being directed by the court to sit with the appellant and aid him to the extent that the appellant wanted his counsel to participate in the litigation.

Despite Attorney Watson's remarks that appellant had directed him not to partake in the trial in any fashion, he did participate in the admission of various exhibits into evidence and did enter a demurrer.

Viewing the facts in toto, we find that Attorney Watson was far from "unfamiliar" with the case so as to label him "unprepared" to represent the appellant in a competent manner. Rather, we conclude that *appellant's insistence* on counsel not acting in his behalf at trial and/or having Attorney Zak reassigned to handle the case,[2] which would have delayed the commencement of the trial even longer (21 months and 3 continuances from May of 1980 until February of 1982), appears to be the crux of the matter. Accordingly, appellant will not be allowed to transform his own recalcitrance into an abuse of discretion argument when the facts indicate otherwise. *Cf. Commonwealth v. Andrews,* 282 Pa.Super. 115, 130, 422 A.2d 855, 862 (1980) ("Appellant further argues that he was denied effective assistance of counsel [when the court refused to appoint counsel of his choice and denied him a continuance to accomplish same.] This argument, however, is not available to one who insists on self-representation.").

We do not in any way wish to minimize that "time allowed for preparation is an important factor in determining whether Sixth Amendment rights have been protected." *Commonwealth v. Minifield,* 225 Pa.Super. 149, 158 n. 8, 310 A.2d 366, 371 n. 8 (1973). However, mere shortness of

---

**2.** Although appellant had the right to the assistance of counsel, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), he was not entitled to free counsel of his choice. *Commonwealth v. Johnson,* 428 Pa. 210, 236 A.2d 805 (1968).

time spent conferring with a client does not constitute a basis for a finding of ineffectiveness. *Commonwealth v. Owens*, 454 Pa. 268, 312 A.2d 378 (1973). Rather, it is what is able to be accomplished in the time available that is the benchmark against which the "effectiveness/preparedness" of counsel is measured. *See generally Commonwealth v. Biancone*, 260 Pa.Super. 197, 202, 393 A.2d 1221, 1224 (1978). This translates into a determination that the unique facts here, e.g., the absence of complex issues, Attorney Watson's involvement with appellant since the pre-trial stage of the case and the court's allowance of a recess to avail attorney and client time ostensibly to review appellant's "defense," militate against our holding that counsel was unprepared. *Compare Commonwealth v. Ross*, 465 Pa. 421, 350 A.2d 836 (1976); *Commonwealth v. Egan*, 322 Pa.Super. 71, 469 A.2d 186 (1983) (guilty plea context); *see also Princess Hotels International v. Hamilton*, 326 Pa. Super. 226, 473 A.2d 1064 (1984); *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972). Thus, our ruling is not a condonation of "a myopic insistence upon expeditiousness in the face of a *justiciable request* for delay." *Ungar v. Sarafite, supra*. Accordingly, appellant's contention that trial counsel was unprepared, upon close examination, is not an accurate reflection of what transpired at the proceedings below and, therefore, does not warrant the relief requested.

The second, and last, of the appellant's averments concerns the claim that the court's modification of his sentence so as to run consecutively to a sentence issued by another judge for a separate offense "enhance[d] the punishment" in violation of the Double Jeopardy clause of the United States Constitution. We disagree.

Counsel for the appellant directs our attention to the following excerpt to exemplify the purportedly illegal sentence entered by the court upon his client; to-wit:

JUDGE NYGAARD: This is the only thing I have to go on and the guilty slip does refer to count one, robbery.

Accordingly, I sentence the defendant as follows:

That he pay the costs of prosecution, undergo imprisonment in confinement for the period of not less than ten, not more than 20 years.

MR. CAULEY [Commonwealth's attorney]: Your Honor, will that sentence be effective today or would it be concurrent with or consecutive to the sentence given to Mr. Fleming by Judge Dwyer? I believe he was sentenced by Judge Dwyer for a 10 to 20 year term on number 813 of 1980, that sentence was imposed on February 26, 1982.

JUDGE NYGAARD: That was for the other—

MR. CAULEY: The other robbery, yes, sir.

JUDGE NYGAARD: *Yes, that would be concurrent, we have two separate offenses—excuse me, consecutive. Did I say concurrent? Consecutive, we have two separate offenses, and he'd be getting a free ride, and no way.*

MR. CAULEY: So, this sentence would be consecutive to the sentence of 813 of 1980, your Honor?

JUDGE NYGAARD: I don't know the numbers, but it's consecutive to the other robbery, that's committed with firearm, I know that. (Emphasis added) (N.T. 5/17/82 at 9–10)

Appellant's counsel admits that his client was still in the courtroom when the change in the sentence (from concurrent to consecutive) was made, and, thus, does not dispute the fact that the appellant had not yet started serving his sentence under the logic espoused by the court in *Green v. United States*, 363 A.2d 979 (D.C.App.1976). Nonetheless, counsel urges us "to re-examine the double jeopardy standards applicable to this situation." (Appellant's Brief at 26) We decline the invitation and do so on the basis that the matter can be disposed of on non-constitutional grounds.

 To start with, in sentencing the controlling record is the endorsement of the sentence upon the back of the Indictment or Information. *Commonwealth v. Thomas*, 219 Pa.Super. 22, 280 A.2d 651 (1971). Where there is a

discrepancy between the sentence as written and as orally pronounced, "[t]he pronounced sentence as recorded on the indictments always controls." (Citations omitted) *Commonwealth ex rel. Middleton v. Banmiller,* 195 Pa.Super. 45, 47, 169 A.2d 343, 345 (1961); *see also Commonwealth ex rel. Marelia v. Hill,* 177 Pa.Super. 520, 522, 110 A.2d 832, 833 (1955) (" 'Oral statements made by the judge in passing sentence, but not incorporated in the written judgment signed by him, are not part of the judgment of sentence.' " (Citations omitted)). Also, a sentence, as any other judgment, is construed in its entirety according to the canons of construction, and *so as to give effect to the intent of the sentencing court. Commonwealth ex rel. Scoleri v. Burke,* 171 Pa.Super. 285, 90 A.2d 847 (1952). Lastly, we note that a sentence can be modified or corrected "within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505; *see also Commonwealth ex rel. Billman v. Burke,* 362 Pa. 319, 66 A.2d 251 (1949); *Commonwealth ex rel. Michelotti v. Ashe,* 359 Pa. 542, 59 A.2d 891 (1948); *Commonwealth ex rel. Senkovich v. Banmiller,* 184 Pa.Super. 592, 135 A.2d 788 (1957).

■ Applying the aforementioned to the case at bar, we see that on the face of the Information at No. 757 of 1980 appears the following pertinent verbiage:

And now, May 17th 1982, the Court sentences the defendant Thomas Jefferson Fleming ... to [a] ... minimum of ... ten (10) Years, and the maximum [of] twenty (20) years to run consecutively to the sentence imposed by Judge Dwyer, February 26th, 1982 on Case No. 813 of 1980 ....

/s/R.L. Nygaard
Richard L. Nygaard, Judge

Thus, giving effect to the intent of the sentencing court as we are required to do under the law, we do not find fault with Judge Nygaard's revision of the sentence to run consecutively, and not currently, to another of appellant's term of imprisonment. This is especially so since the correc-

tion/clarification came about almost in the same breath as the original sentence uttered and, most importantly, is documented on the front of the Information. *Commonwealth ex rel. Middleton v. Banmiller, supra.*

Appellant having raised no other issues for our consideration, we affirm the actions of the court below.

JOHNSON, J., concurs in the result.