J-S42040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN LEGNINE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TREVOR WINGARD | No. 1829 WDA 2015 |

Appeal from the Order November 4, 2015
in the Court of Common Pleas of Allegheny County Civil Division
at No(s): GD 15-011132

BEFORE: SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　**FILED SEPTEMBER 12, 2016**

*Pro se* Appellant, John Legnine, appeals from the order dismissing his petition for writ of *habeas corpus*. Appellant contends the court erred by construing his petition as a Post Conviction Relief Act[1] ("PCRA") petition and by holding he was properly sentenced to thirty-two to sixty-four years' imprisonment. We affirm.

We adopt the facts set forth by a prior panel of this Court:

> During the summer of 1983 and March, 1984, a series of pharmacy robberies occurred in Allegheny County. In each robbery, two armed men wearing stocking masks and gloves took money and/or drugs. As a result, Appellant was charged with eight counts of robbery, one count of aggravated assault, and two counts of conspiracy. A jury trial began on November 11, 1987. Although eyewitnesses

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

to the crime were not able to identify either of the robbers, at trial Kenneth Walter Socovich (Socovich) testified that he committed one of the robberies with Appellant, and Joseph E. Farina (Farina) testified that he committed another five of the robberies with Appellant. In addition, Shirley Slaney (Slaney) testified that she drove Appellant and Farina from the scene of one of the robberies. All three of these witnesses testified under grants of immunity. Appellant neither testified or presented any witnesses on his behalf. At the close of the Commonwealth's case, Appellant's demurrer to two robbery counts was granted. On November 20, 1987, the jury found Appellant guilty of all the remaining counts, except for the one count of aggravated assault.[2] On January 12, 1988, Appellant received an aggregate sentence of thirty-two to sixty-four years['] incarceration.

*Commonwealth v. Legnine*, 1504 Pittsburgh 1996, at 1-2 (Pa. Super. May 28, 1997) (unpublished memorandum).

At the sentencing hearing, for each of the six robbery counts, the court explicitly sentenced Appellant to a mandatory sentence of five to ten years' imprisonment and a sentence of two to four years' imprisonment for one count of conspiracy. N.T. Sentencing Hr'g, 1/12/88, at 35-37. The following exchange occurred:

The court: Do you have any other questions as to your sentence? Do you understand your sentence?

[Appellant]: Yes, sir.

The court: You have got five to ten on the **five** counts of robbery and two to four on the conspiracy charge. All those sentences are to run consecutive to whatever

_____

[2] Subsequently, the court granted Appellant's post-trial motion in part and acquitted Appellant of one count of conspiracy.

> sentence you are presently serving. Do you understand that?
>
> [Appellant]: Yes.

N.T. Sentencing Hr'g, 1/12/88, at 38 (emphasis added). As noted above, the court had previously sentenced Appellant for six—not five—counts of robbery.

That same day, the court signed seven orders[3] that were attached to the criminal information and reflected the above sentences for six counts of robbery and one count of conspiracy. An example follows:

> *And now 1-12-88 as to Cnt one Robbery Defendant sentenced to Mandatory term under Section 9712 Sentencing Code*
>
> And now *1-12* 19*88* in open court, defendant appearing with counsel, sentenced to pay a fine of *6-1/4¢* to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of not less than *5 yrs* or more than *10 yrs* and [illegible faded phrase] to the Western Correctional Diagnostic and Classification Center of Pennsylvania. Date of last commitment _____ 19 _____
>
> By the Court
>
> [handwritten signature]

Order, 1/12/88 (italicized phrases signify handwriting). A clerk of courts also signed seven orders reflecting the above sentences but the court did not sign those orders. The docket, however, does not indicate entry of any of

---

[3] Appellant refers to these orders as "clerk blotters," *infra*.

these January 12, 1988 orders. The docket also states that sentencing occurred on November 20, 1987, the day the jury reached its verdict.

This Court affirmed on direct appeal, and our Supreme Court denied Appellant's petition for *allocatur*. **Commonwealth v. Legnine**, 149 Pittsburgh 1988 (Pa. Super. Jan. 2, 1992), *allocatur denied*, 607 A.2d 251 (Pa. May 8, 1992). In January of 1993, Appellant filed a PCRA petition, which the PCRA court denied; this Court affirmed, and our Supreme Court denied his petition for allowance of appeal.

On June 15, 2015,[4] Appellant filed a petition for a writ of *habeas corpus* and a motion to proceed *in forma pauperis*. The petition alleged that he attempted to obtain a written sentencing order from the trial court. Appellant claimed that the Department of Corrections averred no sentencing order existed. Appellant, however, also contended the Department of Correction later provided "seven pages of clerk blotters" that purportedly increased his sentence. Appellant attached these "clerk blotters," among other exhibits, to his petition. Specifically, Appellant claimed he was sentenced to a minimum sentence of twenty-seven years' imprisonment and the clerk blotters impermissibly increased his minimum sentence to thirty-two years' imprisonment. He argued the Department of Corrections erred

---

[4] **See generally Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa. Super. 2006) (discussing prisoner mailbox rule).

- 4 -

by relying on those "seven pages of clerk blotters" because they are not written sentencing orders.

On September 28, 2015, the trial court issued a Pa.R.Crim.P. 907 notice stating that it construed Appellant's petition as a PCRA petition and that it would dismiss the petition as time-barred. Order, 9/28/15. Appellant filed a response to the Rule 907 notice on October 17, 2015.[5] His response contended that his sentence was increased due to a clerical error and his detention was unlawful because there was no written sentencing order. Appellant's Objections to Notice of Intent to Dismiss/ [sic] P.C.R.A. Pet., 10/17/15, at 1. On November 4, 2015, the court formally dismissed Appellant's petition for writ of *habeas corpus* and dismissed as moot Appellant's motion to proceed *in forma pauperis*. The court also attached and made part of the record the "clerk blotters"/endorsed sentencing orders and the information. Appellant timely appealed and filed a Pa.R.A.P. 1925(b) statement, although the court did not order one. The court did not issue a Rule 1925(a) decision.

Appellant raises the following issues, which we reproduce verbatim:

> 1. Did the lower court exercise an abuse of discretion as it entered an order of court, "AND NOW, This 4th day of November, 2015, the Petition docketed July 1, 2015, is dismissed as frivolous under Pa. R. C. P. 240 (j) (1). The request to proceed in forma Pauperis is dismissed as moot."?

---

[5] ***See*** note 4, ***supra***.

- 5 -

2. Did the lower court exercise an abuse of discretion as it suspended the powers of the writ of habeas corpus that challenged the legality of Appellants commitment and detention without a lawful judgment of conviction order entered in the official criminal docket. ?

3. Did the lower court exercise an abuse of discretion in its Memorandum opinion stating, "Judicial notice is taken of the written sentencing orders signed by the Sentencing Court Judge at CC 8706113. They are made part of the instant record and are attached hereto."?

4. Did the lower court commit reversible error not addressing a claim of Ambiguity in the trial courts oral pronouncement of the sentence, and the sentence actually imposed by the clerk's disposition sheets?

5. Did the lower court commit reversible error not issuing the writ of habeas corpus challenging the legality of Appellants commitment and detention by the Department of Corrections without a Written Sentence Order entered in the Criminal Docket by direction of the Trial Court Judge?

Appellant's Brief at 4 (emphasis omitted).

We summarize the arguments for all of Appellant's issues together, as they are interrelated. Appellant contends that no written sentencing order exists and therefore he has been illegally detained. He maintains that the docket reflects no entry of any sentencing orders. Appellant argues that the court orally imposed an aggregate sentence of twenty-seven to fifty-four years' imprisonment and then imposed a greater sentence after the hearing. He posits that because there the court did not docket any sentencing order, he has not yet been sentenced. Appellant, however, also argues that the seven written sentencing orders contradict the court's oral pronouncement of

his sentence. Appellant concludes that he has been illegally detained and the Department of Corrections erroneously computed his sentence. We hold Appellant is due no relief.

As a prefatory matter, we address whether the PCRA court properly construed Appellant's petition for a writ of *habeas corpus* as a PCRA petition. In **Joseph v. Glunt**, 96 A.3d 365 (Pa. Super.), *appeal denied*, 101 A.3d 787 (2014), the appellant claimed he was illegally imprisoned because the Pennsylvania Department of Corrections did not possess the court's sentencing order. **Id.** at 367. The **Joseph** Court addressed whether it should apply the PCRA to the appellant's petition:

> Initially, we note that the Pennsylvania Supreme Court, albeit in a *per curiam* opinion, has held that a claim that a defendant's sentence is illegal due to the inability of the DOC to "produce a written sentencing order related to [his] judgment of sentence" constitutes a claim legitimately sounding in *habeas corpus*. **Brown v. Penna. Dept. of Corr.**, ––– Pa. ––––, 81 A.3d 814, 815 (2013) (*per curiam*) (citing **Commonwealth ex rel. Bryant v. Hendrick**, 444 Pa. 83, 280 A.2d 110, 112 (1971); **Warren v. DOC**, 151 Pa. Cmwlth. 46, 616 A.2d 140, 142 (1992) ("An application for a writ of *habeas corpus* requests the applicant's release from prison.")). Accordingly, we will treat [the appellant's] submission as a petition for a writ of *habeas corpus* instead of a petition under the PCRA, which typically governs collateral claims implicating the legality of sentence. **See** 42 Pa.C.S. [§] 9542 ("This subchapter provides for an action by which persons . . . serving illegal sentences may obtain collateral relief.").

*Id.* at 368-69.[6]

Instantly, Appellant's *habeas* petition—like the petition in *Joseph*—contended the Department of Corrections could not produce a written sentencing order. *See id.* Appellant further contends that the "clerk blotters" are not valid written sentencing orders and regardless, the court's oral pronouncement of sentence renders ambiguous any written sentencing order. Unlike *Joseph*, however, the core of Appellant's argument is that the trial court improperly sentenced him. *Cf. id.* Thus, Appellant's claim properly lies within the scope of the PCRA. *See* 42 Pa.C.S. § 9542.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*) (citation omitted). Before weighing the substantive merits of Appellant's arguments, however, we consider whether this Court has jurisdiction over the present case. If the PCRA petition is untimely, then there is no subject matter jurisdiction. *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267-68 (Pa. 2008).

As our Supreme Court has explained:

> the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court is precluded from

---

[6] The *Joseph* Court ultimately held the appellant had no remedy if the Department of Corrections could not produce the order. *Joseph*, 96 A.3d at 372.

considering untimely PCRA petitions. ***See, e.g.***, ***Commonwealth v. Murray***, 753 A.2d 201, 203 ([Pa.] 2000) (stating that "given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner"); ***Commonwealth v. Fahy***, 737 A.2d 214, 220 ([Pa.] 1999) (holding that where a petitioner fails to satisfy the PCRA time requirements, this Court has no jurisdiction to entertain the petition). [The Pennsylvania Supreme Court has] also held that even where the PCRA court does not address the applicability of the PCRA timing mandate, th[e Court would] consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief.

***Commonwealth v. Whitney***, 817 A.2d 473, 477-78 (Pa. 2003) (parallel citations omitted). Even if the legality of the sentence itself is in question, courts lack jurisdiction to hear an untimely PCRA petition. ***Fahy***, 737 A.2d at 223 (stating that "[a]lthough legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto").

In order to satisfy the timeliness requirement, a PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one of the exceptions in § 9545(b)(1)(i)-(iii) applies and the petition is filed within 60 days of the date the claim could have been presented." ***Commonwealth v. Copenhefer***, 941 A.2d 646, 648 (Pa. 2007) (some citations and footnote omitted). The PCRA enumerates three exceptions to this time limitation:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Finally, "a petitioner's first PCRA petition, that would otherwise be considered untimely because it was filed more than one year after the judgment of sentence became final, would be deemed timely if it was filed by January 16, 1997." *Commonwealth v. Thomas*, 718 A.2d 326, 329 (Pa. Super. 1998) (*en banc*).

Instantly, Appellant's judgment of sentence became final on August 6, 1992, as that was the deadline for filing a petition for a writ of *certiorari* with the United State Supreme Court. *See* Sup. Ct. R. 13. Appellant filed the instant, second PCRA petition on June 15, 2015, well after the one-year deadline. *See generally Thomas*, 718 A.2d at 329. Appellant did not plead, let alone prove, any of the three timeliness exceptions in his petition. *See* 42 Pa.C.S. § 9545(b)(1)(i)-(iii); *Whitney*, 817 A.2d at 477-78. Therefore, the PCRA court lacked jurisdiction to consider the legality of Appellant's sentence. *See Whitney*, 817 A.2d at 477-78; *Fahy*, 737 A.2d

at 223. Accordingly, the PCRA court did not err in dismissing his PCRA petition as untimely. *See Wilson*, 824 A.2d at 833.

Assuming, however, that Appellant's claim falls within the scope of a petition for a writ of *habeas corpus*, the standard of review is well-settled:

> The ancient writ of *habeas corpus* is inherited from the common law, referred to by Sir William Blackstone as the most celebrated writ in the English law. The writ lies to secure the immediate release of one who has been detained unlawfully, in violation of due process. Traditionally, the writ has functioned only to test the legality of the petitioner's detention.
>
> Under Pennsylvania statute, *habeas corpus* is a civil remedy that lies solely for commitments under criminal process. *Habeas corpus* is an extraordinary remedy and may only be invoked when other remedies in the ordinary course have been exhausted or are not available. Our standard of review of a trial court's order denying a petition for a writ of habeas corpus is limited to an abuse of discretion.

*Id.* at 369 (internal quotation marks, brackets, and citations omitted).

Furthermore,

> [w]hen a petitioner is in custody by virtue of a judgment of sentence of a court of competent jurisdiction, the writ generally will not lie. The rationale for this limitation is the presumption of regularity which follows the judgment. The writ, as stated above, is an extraordinary remedy and, therefore, a judgment rendered in the ordinary course is beyond the reach of habeas corpus. That conviction cannot be put aside lightly, and it becomes stronger the longer the judgment stands. Consequently, *habeas corpus* generally is not available to review a conviction which has been affirmed on appeal.

*Id.* at 372 (citations omitted).

By way of background, in 1988, "[i]n sentencing the controlling record is the indorsement of the sentence upon the back of the indictment, signed by the judge." *Commonwealth v. Thomas*, 280 A.2d 651, 654 (Pa. Super. 1971) (citation omitted); *accord Commonwealth v. Isabell*, 467 A.2d 1287, 1290 (Pa. 1983) (construing written sentence endorsed on bill of information); *Commonwealth v. Williams*, 636 A.2d 183, 184 n.2 (Pa. Super. 1993) (*en banc*) (relying on written endorsement of sentence on back of information that was dated the same day of the sentencing hearing); *Commonwealth v. Fleming*, 480 A.2d 1214, 1223 (Pa. Super. 1984) (stating, "Where there is a discrepancy between the sentence as written and as orally pronounced, '[t]he pronounced sentence as recorded on the indictments always controls.'" (citation omitted)).

Instantly, Appellant's *habeas* petition attached, as an exhibit, the "clerk blotters"/endorsed sentencing orders. The trial court, in its decision dismissing Appellant's petition, attached and made part of the record Appellant's criminal information and endorsed sentencing orders at issue. Further, the court specifically sentenced Appellant to five to ten years' imprisonment for each of the six robbery counts and to two to four years' imprisonment for the sole conspiracy count. N.T. Sentencing Hr'g, 1/12/88, at 35-37. Subsequently, when summarizing Appellant's sentences, the court misstated that Appellant was sentenced on five—not six—counts of robbery. *Id.* at 38. To the extent this could be construed as a discrepancy, we

examine the endorsed sentences. ***See Fleming***, 480 A.2d at 1223; ***Thomas***, 280 A.2d at 654. Although the endorsed sentencing orders were not explicitly docketed on January 12, 1988, they accurately reflect the court's specific, oral pronouncement of sentence and were also dated and signed on January 12, 1988. ***See*** Orders, 1/12/88. Thus, contrary to Appellant's protestations, sentencing orders exist in his case and the Department of Corrections did not impermissibly increase his minimum sentence. Further, because Appellant's conviction has been affirmed on appeal, *habeas* relief is generally unavailable. ***See Joseph***, 96 A.3d at 372. Having discerned no abuse of discretion, ***id.*** at 369, we therefore affirm the trial court's order, albeit on different grounds. ***See Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

Appellant's *pro se* "Motion Pursuant to Pa.R.A.P. 1926(d) Objections to Supplemented Record" denied. Appellant's *pro se* "Motion Pursuant to Pa.R.A.P. 1926 Correction of Record" denied. Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016

- 13 -