**Woodens B. JOSEPH, a/k/a Joseph B. Woodens, Appellant**

v.

**Steven R. GLUNT, Superintendent, Appellee.**

Superior Court of Pennsylvania.

Submitted November 18, 2013.
Filed May 23, 2014.

Woodens B. Joseph, appellant, pro se.

Debra S. Rand, Mechanicsburg, for appellee.

BEFORE: PANELLA, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

Joseph B. Woodens ("Woodens") appeals from the May 14, 2013 order that dismissed his petition for a writ of *habeas corpus*. We affirm.

On December 18, 2008, following a jury trial, Woodens was found guilty of first-degree murder, criminal conspiracy, carrying a firearm without a license, and false identification to law enforcement.[1] *See* Notes of Testimony ("N.T."), 12/18/2008, at 256–59. That same day, Woodens was sentenced to a mandatory sentence of life imprisonment on the first-degree murder conviction. *Id.* at 265. On the criminal conspiracy conviction, Woodens was sentenced to a term of ten to twenty years' incarceration. *Id.* On the firearms charge, he was sentenced to a term of two to four years' incarceration. *Id.* There was no further penalty imposed for the false identification charge. All of Woodens' additional sentences were set to run concurrently with his life sentence. *Id.*

Following the trial court's denial of his post-sentence motions, on February 3, 2009, Woodens filed a notice of appeal from his judgment of sentence. On Janu-

---

1. 18 Pa.C.S. §§ 2502(a), 903(a), 6106(a)(1), and 4914, respectively.

ary 20, 2010, Woodens filed a motion requesting that this Court remand his direct appeal for the appointment of counsel. On February 22, 2010, this Court remanded for the appointment of counsel. Two different counsels were appointed to represent Woodens on March 16 and July 12, 2010, respectively. Thereafter, on January 14, 2011, this Court ultimately affirmed Woodens' judgment of sentence. *Commonwealth v. Woodens*, 23 A.3d 1082 (Pa.Super.2011) (table).

On November 3, 2011, Woodens filed a petition for collateral relief pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–46. On April 12, 2012, the PCRA court dismissed Woodens' PCRA petition. On April 24, 2012, Woodens filed a notice of appeal (967 MDA 2012). On May 3, 2013, this Court affirmed the dismissal of Woodens' PCRA petition. *Commonwealth v. Woodens*, 81 A.3d 989 (Pa.Super.2013) (table). Woodens filed a petition for reargument, which this Court denied on June 27, 2013. On January 21, 2014, the Pennsylvania Supreme Court denied Woodens' petition for allowance of appeal. *Commonwealth v. Woodens*, —— Pa. ——, 83 A.3d 415 (2014) (*per curiam* ).

■ Contemporaneously with his PCRA petition, Woodens filed the separate petition that is the subject of this appeal. On May 10, 2013, Woodens filed a petition in the Civil Division of the Court of Common Pleas of Clearfield County that he styled as a "Petition for Writ of *Habeas Corpus Ad Subjiciendum.*"[2] Specifically, Woodens filed the instant lawsuit against Steven R. Glunt ("Glunt") in his capacity as the Superintendent of SCI–Houtzdale, where

Woodens then was incarcerated. In relevant part, Woodens asserted in his petition that his sentence is illegal, and that his rights under the United States and Pennsylvania Constitutions have been violated, because the Pennsylvania Department of Corrections ("DOC") "does not possess a lawful court order signed by [the sentencing court] authorizing any lawful restraint of [Woodens'] body." Woodens' Petition for Writ of *Habeas Corpus Ad Subjiciendum,* 5/10/2013, at 5. Thus, Woodens argues that his sentence violates 42 Pa.C.S. § 9764(A)(8). *Id.* at 6–10.

Attached to Woodens' petition were copies of his correspondence with the DOC documenting his efforts to obtain a copy of his written sentencing order. On or about December 13, 2012, Woodens submitted a request to the DOC pursuant to Pennsylvania's Right–to–Know Law.[3] In a letter dated January 16, 2013, the DOC's Right–to–Know Office denied Woodens' request, stating that the DOC did not possess a copy of the sentencing order. On or about February 11, 2013, Woodens also submitted an "Inmate's Request to Staff Member" requesting a copy of the "written judgment of sentence order" in his case. On March 11, 2013, the Pennsylvania Office of Open Records ("OOR") issued a "Final Determination" in Woodens' appeal from the DOC's conclusion that it did not have a written copy of Woodens' sentencing order. In that letter, the OOR concluded that an affidavit from the DOC affirming the "nonexistence" of the sentencing order was determinative: "Based on the materials provided, the OOR finds that the [DOC] established that no responsive records exist. Accordingly, the

---

**2.** A writ of *habeas corpus ad subjiciendum* is defined as "[a] writ directed to someone detaining another person and commanding that the detainee be brought to court." Black's Law Dictionary 778 (9th ed.2009).

**3.** 65 P.S. §§ 67.101, *et seq.*

appeal is denied and [the DOC] is not required to take further action." Final Determination, 3/11/2013.

On May 14, 2013, the trial court filed an order and opinion that dismissed Woodens' petition for a writ of *habeas corpus*. The trial court concluded, after reviewing the transcript of the sentencing hearing and the criminal docket in Woodens' case, that, even in the absence of a sentencing order, the existent record authorized Woodens' incarceration:

14. It is clear that **either** a transcript of the sentencing proceeding or a separate sentencing order constitute the necessary record. Here, [Woodens] does not plead that the [DOC] does not have a copy of the transcript of the sentencing proceedings, so the [trial court] presumes it was supplied by Dauphin County[4] at [the] time of state prison commitment. Accordingly, the Commonwealth and [the DOC] have complied with 42 Pa.C.S. § 9764(a)(8) and [Woodens' petition for a writ] is frivolous.

Order, 5/14/2013, at 3 (emphasis added).

On May 29, 2013, Woodens filed a timely notice of appeal. On May 30, 2013, the trial court directed Woodens to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On June 11, 2013, Woodens timely complied. On July 26, 2013, the trial court submitted a letter directing this Court's attention to the reasoning in the trial court's May 14, 2013 order, in lieu of a Rule 1925(a) opinion.

Woodens presents the following issues for our consideration:

1. Whether the [trial court] erred in dismissing [Woodens'] "Writ of *Habeas Corpus Ad Subjiciendum*" and "Application to Proceed *In Forma Pauperis*"?

2. Whether [Woodens' c]onstitutional rights under the Fourteenth Amendment [to] the United States Constitution and Art. 1 § 9 of the Pennsylvania Constitution were violated by the Commonwealth of Pennsylvania and the Department of Corrections requiring discharge when they illegally detained [Woodens] and implemented [their] own procedures regarding cause and commitment of [Woodens]?

Woodens' Brief at 3 (citation modified). Although listed as two separate issues, Woodens' claims essentially encompass a single argument: His current sentence is illegal because the DOC does not have a written copy of the sentencing order in Woodens' case. Woodens contends that this alleged violation of his due process rights should compel his immediate release from prison. Thus, we will address Woodens' claims collectively.

█ Initially, we note that the Pennsylvania Supreme Court, albeit in a *per curiam* opinion, has held that a claim that a defendant's sentence is illegal due to the inability of the DOC to "produce a written sentencing order related to [his] judgment of sentence" constitutes a claim legitimately sounding in *habeas corpus*. *Brown v. Penna. Dept. of Corr.*, —— Pa. ——, 81 A.3d 814, 815 (2013) (*per curiam*) (citing *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110, 112 (1971); *Warren v. DOC*, 151 Pa.Cmwlth. 46, 616 A.2d 140, 142 (1992) ("An application for a writ of *habeas corpus* requests the appli-

4. Woodens filed the instant case in Clearfield County because SCI–Houtzdale in Clearfield County was his residence when he filed the petition, as well as the location of the defendant/appellee in this case, Glunt. Woodens' conviction originated from Dauphin County.

cant's release from prison.")). Accordingly, we will treat Woodens' submission as a petition for a writ of *habeas corpus* instead of a petition under the PCRA, which typically governs collateral claims implicating the legality of sentence. *See* 42 Pa.C.S. 9542 ("This subchapter provides for an action by which persons . . . serving illegal sentences may obtain collateral relief.").

Our standard of review in this context is axiomatic:

The ancient writ of *habeas corpus* is inherited from the common law, referred to by Sir William Blackstone as the most celebrated writ in the English law. The writ lies to secure the immediate release of one who has been detained unlawfully, in violation of due process. [T]raditionally, the writ has functioned only to test the legality of the petitioner's detention.

*Commonwealth v. Wolfe,* 413 Pa.Super. 583, 605 A.2d 1271, 1272–73 (1992) (internal citations omitted). "Under Pennsylvania statute, *habeas corpus* is a civil remedy [that] lies solely for commitments under criminal process." *Commonwealth v. McNeil,* 445 Pa.Super. 526, 665 A.2d 1247, 1249–50 (1995) (citing *Wolfe,* 605 A.2d at 1273). "*Habeas corpus* is an extraordinary remedy and may only be invoked when other remedies in the ordinary course have been exhausted or are not available." *Id.* (citing *Commonwealth ex rel. Kennedy v. Myers,* 393 Pa. 535, 143 A.2d 660, 661 (1958)). "Our standard of review of a trial court's order denying a petition for [a] writ of habeas corpus is limited to [an] abuse of discretion." *Rivera v. Penna. Dep't of Corrs.,* 837 A.2d 525, 528 (Pa.Super.2003).

The statute cited by Woodens in support of his argument provides, in pertinent part, as follows:

**§ 9764. Information required upon commitment and subsequent disposition**

(a) **General rule.**—Upon commitment of an inmate to the custody of the [DOC], the sheriff or transporting official shall provide to the institution's records officer or duty officer, in addition to a copy of the court commitment form DC–300B generated from the Common Pleas Criminal Court Case Management System of the unified judicial system, the following information:

\* \* \*

(8) A copy of the sentencing order and any detainers filed against the inmate which the county has notice.

42 Pa.C.S. § 9764. Although not mentioned explicitly in his brief before this Court, Woodens previously has invoked 37 Pa.Code § 91.3 ("Reception of inmates") in support of his claims, *see* Woodens' Petition for Writ of *Habeas Corpus Ad Subjiciendum,* 5/10/2013, at 6–10, which provides as follows: "[The DOC] will accept and confine those persons committed to it under lawful court orders . . . when information has been provided to [the DOC] as required by 42 Pa.C.S. § 9764 (relating to information required upon commitment and subsequent disposition)." 37 Pa.Code § 91.3.

Woodens advances numerous legal arguments in support of the instant petition, many of which are not relevant to the present controversy. The most complete statement of Woodens' argument is as follows:

[T]he only sentence imposed upon a prisoner was the one signed by the sentencing judge, under statutory authority and entered into the record. . . . 42 Pa. C.S. § 9764 does not state anywhere in its provision[s] that a "sentencing order" can be substituted by any other documents, *e.g.,* [the] transcript of [the] sentencing proceedings.

Woodens' Brief at 12. Woodens argues that the use of the word "shall" in section 9764 establishes a mandatory requirement that the DOC must satisfy in order to establish its jurisdiction to detain a prisoner. *Id.* Consequently, Woodens claims that the DOC's inability to produce a copy of this sentencing report constitutes a fatal failure that should result in his immediate release. We disagree.

Woodens is not the first individual to assert this species of claim. In addition to the aforementioned holding in *Brown,* our Commonwealth Court has adjudicated[5] at least one similar appeal on the merits, albeit in an unpublished memorandum. In *Travis v. Giroux,* No. 489 C.D.2013, 2013 WL 6710773 (Pa.Cmwlth. Dec. 18, 2013), an appellant challenged the DOC's authority to hold him in custody because, as in the present situation, the DOC was unable to produce a written sentencing order. Relying upon two holdings from the United States District Court for the Eastern District of Pennsylvania, the Commonwealth Court held that subsection 9764(a)(8) does not provide a cause of action for prisoners:

> The current version of [42 Pa.C.S. § 9764(a)(8) ] requires that a copy of the sentencing order be provided to the [DOC] upon commitment of an inmate to its custody. **However, it does not create any remedy or cause of action for a prisoner based upon the failure to provide a copy to the DOC.** The statute regulates the exchange of prisoner information between the state and county prison system, and does not provide a basis for *habeas* relief.

*Travis,* 2013 WL 6710773, at *3 (quoting *Gibson v. Wenerowicz,* No. 11–CV–7751, slip op. at 3 n. 6, 2013 WL 3463575 (E.D.Pa. Mar. 5, 2013), *report and recommendation adopted as modified,* (E.D.Pa. Jul. 10, 2013) (citing *Mundy v. Kerestes,* No. 13–6081, slip op. at 1, 2013 WL 5781108 (E.D.Pa. Oct. 24, 2013))) (emphasis in original). Specifically, the Common-

---

**5.** The Commonwealth Court has held that "[h]abeas corpus actions, except as ancillary to proceedings within our appellate jurisdiction, are expressly excluded from our original jurisdiction by virtue of [subsection] 761(a)(1)(i) of the Judicial Code." *Gillespie v. Commonwealth, Dept. of Corr.,* 106 Pa. Cmwlth. 500, 527 A.2d 1061, 1063 (1987) (citing 42 Pa.C.S. § 761(a)(1)(i)). Additionally, 42 Pa.C.S. § 762, which sets forth the exclusive appellate jurisdiction of the Commonwealth Court, specifically excludes "applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court." 42 Pa.C.S. § 762(a)(1)(i). Our reading of section 762 indicates that this case does not fall under the Commonwealth Court's exclusive appellate jurisdiction. Nonetheless, *Travis* indicates that the Commonwealth Court adjudicates this type of controversy from time to time. Even assuming, *arguendo,* that this case could have been appealed to the Commonwealth Court, our jurisdiction would be proper:

> Although 42 Pa.C.S. § 762 refers to the "exclusive jurisdiction" of the Common-

wealth Court in certain cases, 42 Pa.C.S. § 704 provides for an exception if the appellee does not object to the exercise of jurisdiction by the Superior Court. Where, as in this case, the appellee has raised no objection to our exercise of jurisdiction, it is within our discretion to transfer the matter to the Commonwealth Court or retain jurisdiction. In exercising this discretion, we must examine the question on a case-by-case basis. *Valley Forge Industries v. Armaud [Armand] Construction, Inc.,* 248 Pa.Super. 53, 374 A.2d 1312, 1316 (1977). This court may retain jurisdiction over cases that should have been appealed to the Commonwealth Court in the interest of judicial economy. *Overstreet v. Borough of Yeadon,* 475 A.2d 803, 804 n. * (Pa.Super.1984).

*Lara, Inc. v. Dorney Park Coaster Co., Inc.,* 369 Pa.Super. 27, 534 A.2d 1062, 1065–66 (1987) (internal citations modified). As Glunt has not objected to our exercise of jurisdiction, we will exercise our discretion to retain jurisdiction in the interest of judicial economy. *Lara, Overstreet, supra.*

wealth Court emphasized that the appellant in *Travis* did not dispute that he had pleaded guilty and that he was sentenced upon that plea. Thus, even where there appeared to be no sentencing order in the possession of the DOC **or** the trial court, the Commonwealth Court held that subsection 9764(a)(8) furnished no basis for relief where the appellant's sentence was confirmed by the certified record. *Id.* at *3–4 (holding that the appellant's claim pursuant to subsection 9764(a)(8) was "without merit" where the criminal docket confirmed that the appellant had pleaded guilty and had been duly sentenced).

■ Although the decisions of the Commonwealth Court are not binding upon this Court, they may serve as persuasive authority. *Commonwealth v. Ortega*, 995 A.2d 879, 885 (Pa.Super.2010); *see also Petow v. Warehime*, 996 A.2d 1083, 1088 n. 1 (Pa.Super.2010) ("[W]e may turn to our colleagues on the Commonwealth Court for guidance when appropriate."). We find the reasoning presented in *Travis* to be probative and instructive. The language and structure of section 9764, viewed in context, make clear that the statute pertains not to the DOC's authority to detain a duly-sentenced prisoner, but, rather, sets forth the procedures and prerogatives associated with the transfer of an inmate from county to state detention.[6] None of the provisions of section 9764 indicate an affirmative obligation on the part of the DOC to maintain and produce the docu-

ments enumerated in subsection 9764(a) upon the request of the incarcerated person. Moreover, section 9764 neither expressly vests, nor implies the vestiture, in a prisoner of any remedy for deviation from the procedures prescribed within.

The only argument offered by Woodens that is responsive to this discrepancy is his assertion that "an oral pronouncement of a sentence is not a sentence imposed until incorporated in a signed written judgment." Woodens' Brief at 11. Woodens cites *Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977), and *Commonwealth v. Foster*, 229 Pa.Super. 269, 324 A.2d 538 (1974), in support of this claim. However, Woodens' reliance upon *Hodge* and *Foster* is unavailing. Woodens has misstated our holdings.

*Hodge* and *Foster* state **only** as follows: "The courts of Pennsylvania have consistently maintained that 'oral statements made by the judge in passing sentence, but not incorporated in the written judgment signed by him, are no part of the judgment of sentence.'" *Hodge*, 369 A.2d at 820; *Foster*, 324 A.2d at 539. In both cited cases, the appellants claimed that the respective sentencing court stated one sentence orally but immediately reconsidered following a corrective comment from a present party, such that it imposed a different sentence in writing. *Id.* That situation simply is not at issue in the present case. To the contrary, the transcript of the sentencing hearing indicates, unequivo-

---

**6.** Subsection (b) of the statute provides for the transmission by the court of various sentencing-related documents to the county jail; subsection (c) addresses the transmission of the documents identified in subsection (b) by the county jail to DOC in the event that the prisoner is transferred before those documents arrived at the county jail; subsection (d) addresses DOC's obligations to transfer certain documents to the county jail when a prisoner is returned to county custody from state custody; subsections (e), (f), and (g) address vari-

ous administrative steps that must occur prior to or in tandem with the release of an inmate from county or state custody into county or state probation or parole; subsections (h) and (i) pertain to the disposition of inmate moneys and the satisfaction of any remaining restitution or other financial obligations; subsection (j) provides for the transfer of certain documentation upon the release of a prisoner by DOC upon the expiration of a prisoner's maximum sentence; and subsections (k) and (*l*) concern the scope of section 9764.

cally, that Woodens was sentenced to a term of life imprisonment for his first-degree murder conviction, and various concurrent sentences on the other charges. N.T. at 265. Woodens does not argue that there is any discrepancy between the sentencing court's oral pronouncements and the sentence actually imposed. Therefore, his reliance upon *Hodge* and *Foster* is misplaced.

We note the following with regard to relief under *habeas corpus*:

> When a petitioner is in custody by virtue of a judgment of sentence of a court of competent jurisdiction, the writ generally will not lie. *Commonwealth ex rel. Wilson v. Keeper of the Jail of Philadelphia County,* 26 Pa. 279, 280 (1856). The rationale for this limitation is the presumption of regularity which follows the judgment. *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 71 A.2d 799 (1950); *see Commonwealth ex rel. DeSimone v. Cavell,* 185 Pa.Super. 131, 138 A.2d 688 (1958). The writ, as stated above, is an extraordinary remedy and, therefore, a judgment rendered in the ordinary course is beyond the reach of *habeas corpus.* That conviction cannot be put aside lightly, and it becomes stronger the longer the judgment stands. *Commonwealth ex rel. Hoch v. Banmiller,* 186 Pa.Super. 57, 140 A.2d 625 (1958). Consequently, *habeas corpus* generally is not available to review a conviction which has been affirmed on appeal. *Commonwealth ex rel. Dugan v. Day,* 180 Pa.Super. 643, 122 A.2d 90 (1956).

*Wolfe,* 605 A.2d at 1273. Instantly, Woodens has cited no apposite legal authorities demonstrating that the undisputed record of his judgment of sentence maintained by the sentencing court constitutes insufficient authority for his continuing detention. *See* T.C.O. at 2 ("Through use of the Common Pleas Case Management System, the [thirteen] page criminal docket of [Woodens] ... was obtained. This docket shows that [Woodens] was found guilty of First Degree Murder.... He was sentenced to life without parole by ... Judge John F. Cherry."); *see also* Dauphin County Criminal Docket CP–22–CR–0001269–2009 at 6. As evinced by *Travis,* and the apposite federal cases, courts confronting this issue in the past have deemed a record of the valid imposition of a sentence as sufficient authority to maintain a prisoner's detention notwithstanding the absence of a written sentencing order under 42 Pa.C.S. § 9764(a)(8). Both the criminal docket provided by the trial court and the transcript of the sentencing hearing confirm the imposition, and legitimacy, of Woodens' sentence.

Based upon the foregoing, we discern no merit in Woodens' arguments. The trial court properly reviewed the record and discovered a valid sentencing order contained therein. Moreover, the trial court correctly concluded that, even in the absence of a written sentencing order, the DOC had continuing authority to detain Woodens. We discern no abuse of discretion in the trial court's conclusion. Thus, Woodens' claim fails.

Order affirmed.