J-S14008-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LARRY BARKSDALE, | : | |
| | : | |
| APPEAL OF: PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE | : | No. 3297 EDA 2013 |

Appeal from the Order entered October 21, 2013,
Court of Common Pleas, Montgomery County,
Criminal Division at No. CP-46-CR-0004544-2005

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MARCH 23, 2015**

The Pennsylvania Board of Probation and Parole ("the Board") appeals from the October 21, 2013 order entered by the Montgomery County Court of Common Pleas granting the habeas corpus petition (the "Petition") filed by Larry Barksdale ("Barksdale") for immediate release from prison.  Because the trial court lacked jurisdiction over the matter, we vacate the order.

The trial court summarized the facts and procedural history of this case as follows:

> On June 26, 2006, [Barksdale] was sentenced to three[] years and six[] months to seven[] years of incarceration for two counts of [p]ossession with [i]ntent to [d]eliver a [c]ontrolled [s]ubstance. [Barksdale]'s original minimum incarceration date was December 26, 2009, and original maximum incarceration date was June 26, 2013.
>
> On January 13, 2010, [Barksdale] was released on parole to an approved home plan. [Barksdale]'s

maximum sentence date was listed as June 26, 2013 on the Board's release order.

On May 23, 2012, while on parole, [Barksdale] was arrested in Plymouth Township, Montgomery County, Pennsylvania and charged with [d]riving [u]nder the [i]nfluence ["DUI"]. The Board took no action in response to this arrest.

On July 24, 2012, while still on parole, [Barksdale] was arrested in Philadelphia and charged with [DUI] and [c]riminal [m]ischief.

On July 25, 2012, the Board lodged a detainer against [Barksdale].

On October 3, 2012, the Board recommitted [Barksdale] to serve nine[] months [of] [backtime] for multiple technical parole violations. The Board's decision noted [Barksdale]'s maximum sentence date of June 26, 2013, subject to change if convicted of outstanding charges.

On January 8, 2013, [Barksdale] pled guilty in the Philadelphia Municipal Court to the July 24, 2012, [DUI] offense, supra. [Barksdale] was then sentenced to a minimum of ninety[] days [of] incarceration to a maximum of six[] months [of] incarceration. [Barksdale] was also sentenced to serve an eighteen[-]month probationary sentence.

On April 22, 2013, [Barksdale] had a parole revocation hearing before the Board and waived his right to counsel.

On May 23, 2013, the Board issued a ruling declining to award [Barksdale] any credit for the time that he spent at liberty on parole. [There is nothing in the record to indicate that the Board notified Barksdale of this decision at this time.]

On June 19, 2013, the Board recommitted [Barksdale] to a state correctional facility for his DUI

conviction in Philadelphia County. [Barksdale]'s twelve[-]month DUI sentence was to run concurrent to the nine[-]month sentence he received for the technical parole violations for a total of twelve months [of] incarceration, "when available, pending completion of parole from [Barksdale]'s Philadelphia County conviction and pending resolution of [Barksdale]'s outstanding charges in Montgomery County."

On June 24, 2013, the Board, through its agent at the Norristown [s]ub-[o]ffice, sent a "Hold Past Max" order to the prison to detain [Barksdale] pending further Board action.

On June 25, 2013, the Board mailed its decision recommitting [Barksdale] as a convicted parole violator and mandating that [Barksdale] serve twelve[] months [of] [backtime] "when available." This June 25, 2013 decision, did not note a maximum sentence date for [Barksdale].

June 26, 2013 marked [Barksdale]'s original maximum incarceration date, but [Barksdale] was not released from prison.

As a result of the foregoing, [Barksdale] communicated extensively with Board staff to understand why he was being held past his maximum date, when all of the paperwork in his possession stated that he should be released. Despite his written and oral requests, [Barksdale] was given no answer except [being] told to refer to his previous paperwork, and that the Board would have another revocation hearing.

Consequently, on August 8, 2013, approximately five[] weeks past his release date, [Barksdale] resorted to filing a pro se [Petition] and [a]pplication for an [i]mmediate [h]earing for [the Petition] with [the trial c]ourt.

Counsel was appointed to represent [Barksdale], and on October, 21, 2013, the [trial c]ourt held the habeas hearing to address [Barksdale]'s Petition. At the hearing, the assistant district attorney was present and a representative from the Board. Further, the [trial c]ourt also communicated extensively with other Board staff via telephone [off the record]. … [T]he [trial c]ourt granted [Barksdale]'s Petition and ordered that [Barksdale] be released forthwith.

Finally, on November 7, 2013, weeks after the [trial c]ourt's disposition of the present matter, the Board notified [Barksdale] that it had just recalculated the maximum sentence date to February 20, 2016, due to his new conviction while on parole. … Also, on this date, the Board filed a [p]etition to [d]ismiss the already adjudicated [h]abeas [p]etition.

On November 8, 2013, the [trial c]ourt held a further video conference with reference to the disputed October 21, 2013, ruling. The following exchange occurred on the record[:]

ADA: This is a [p]etition for a [w]rit of [h]abeas [c]orpus that was filed by Mr. Barksdale and also by his attorney. For the purposes of the record today, the Commonwealth would assert that in speaking in conference and speaking with the [] Board [], my understanding is that the [] Board will file a [m]otion to [v]acate the [o]rder that was issued by Your Honor ordering the release of Mr. Barksdale on October 21st and that that motion will be primarily based on lack of jurisdiction of the Court of Common Pleas, asserting the appropriate jurisdiction lies within the Commonwealth Court, and that is where Mr. Barksdale's remedies then lie as well. [...]

THE COURT: And, at the time, in fairness, at the time that the [o]rder was issued, we had no information that any recalculation had occurred.

- 4 -

His run date had run. There was nothing that we were aware of, despite our attempts to notify [the Board] and talk to [the Board], they did not inform us of anything that was holding [Barksdale]. [...]

And we find out that yesterday, they finally recalculated his run date.

DEFENSE COUNSEL: At that time[,] he was being held in excess of his maximum incarceration date. We found out that yesterday, on the 7th, they recalculated his max date, and it's now sometime in 2016. [...]

Your Honor, my complaint is with the complete lack of procedural safeguard designed to ensure this process is moving as efficiently as possible.

We have now a person that has remained incarcerated past his backdate without knowing when he's going to be released.

There's a fundamental unfairness to that and a deprivation that cannot be remedied by just telling him, now, okay, well, now we've done it, now that we've got the [o]rder saying you had to be released two weeks ago, now we've recalculated it, so now make your motion for parole. Now that you brought us into [c]ourt two times, you have to then ask us to parole you. It just seems like he's fighting an uphill battle here. [...]

When we're dealing with somebody's liberty, an individual's liberty, I would suggest that we err on the side of releasing him now, and he can be re-incarcerated. He's under supervision. He has a Montgomery County case.

THE COURT: I have to tell you, I have similar concerns about the efficiency of the system, the way it works.

I'm a little distressed because of the fact that we did reach out to [the Board] with the defense attorney and the prosecutor present. We spoke to several people there.

At that point in time, not one of them was able to explain a reason to keep [Barksdale] incarcerated. And without that reason, this [c]ourt's hands were tied.

There was nothing there that prevented me from releasing him at that point. It was not for lack of trying.

Now we find the day before another hearing, they decide ["]now I'm going to recalculate,["] and it doesn't seem fair.

But what I will do, and I will tell you this, is if [the Board] and the prosecution wants to, I will entertain a motion to revoke my prior [o]rder, rescind it, but I want some reasons for it.

COUNSEL FOR BOARD: Yes, Your Honor, and the Board will provide that motion.

THE COURT: And I hope that if this serves any other purpose, the purpose it serves is for the [] Board to get their act together with regard to this, frankly, because this is inexcusable.

On November 14, 2013, the Board filed its [m]otion to [r]econsider the [c]ourt's October 21, 2013[] ruling, raising subject matter jurisdiction for the first time. [On November 20, 2013,] [t]he [trial court] scheduled argument for the same for its next available date in December. However, [also] on November 20, 2013, the Board filed the present appeal thereby divesting the [trial c]ourt of jurisdiction.

Trial Court Opinion, 6/10/14, at 1-6 (record citations, footnotes, and emphasis omitted).

On December 16, 2013, this Court received correspondence from the trial court requesting "that the above[-]captioned matter be remanded back to the [t]rial [c]ourt so that it can vacate its[] [o]rder, and permit [Barksdale] to proceed through the Board's internal process." Trial Court Letter, 12/16/13, at 2 (emphasis omitted). In its subsequent written opinion pursuant to Pa.R.A.P. 1925(a), however, the trial court seeks affirmance of the October 21, 2014 order, apparently intending to retract its earlier request for remand. *See* Trial Court Opinion, 6/10/14, at 10.

On May 20, 2014, the Board filed a petition for this Court to confirm that the Board's appeal of the October 21, 2013 trial court order operated as an automatic supersedeas. By Per Curiam Order dated July 2, 2014, this Court granted the petition and ordered that "the October 21, 2013 order of the Court of Common Pleas is STAYED pending the disposition of this appeal." Order, 7/2/14 (emphasis in the original). Barksdale sought reconsideration or reargument of the July 2, 2014 Order, which this Court denied on September 16, 2014.

On appeal, the Board raises the following issues for our review:

   I. Did the trial court commit an error of law when it granted Barksdale's habeas corpus petition and released him because it lacked jurisdiction to release Barksdale, a state prisoner whose parole had been previously revoked by the [] Board [] for committing

- 7 -

a new crime while on parole with a pending recomputation of his maximum sentence date?

II. Did the trial court commit an error of law when it released Barksdale from incarceration after the [] Board [] had previously revoked Barksdale's parole with the intention of recomputing Barksdale's maximum sentence date by denying him credit for the time he previously spent at liberty on parole?

The Board's Brief at 4.

The Board's first issue on appeal challenges the trial court's jurisdiction to decide Barksdale's Petition. "The existence of subject matter jurisdiction goes to the heart of a court's ability to act in a particular case. It is not waivable, even by consent, and may be raised by any party or by the court, sua sponte, at any stage of the proceeding." *Commonwealth v. Hemingway*, 13 A.3d 491, 496 (Pa. Super. 2011) (citing *Commonwealth v. Jones*, 929 A.2d 205, 208 (Pa. 2007)). "Because the question of subject matter jurisdiction is purely one of law, our standard of review is de novo, and our scope of review is plenary." *Commonwealth v. Brinson*, 30 A.3d 490, 492 (Pa. Super. 2011) (citation omitted).

The Board asserts that jurisdiction in this case rested in the Commonwealth Court, not the Court of Common Pleas. The Board's Brief at 11. The Board states that habeas corpus relief was not available to Barksdale, as Barksdale had other remedies available to him to challenge his continued incarceration. According to the Board, Barksdale could have appealed his placement in "when available" status or filed a writ of

mandamus to compel the Board to recalculate his maximum sentence, either of which would have been filed in the Commonwealth Court. *Id.* at 13.

The trial court contends that it did have jurisdiction over the matter and that habeas corpus relief was appropriate in this case. The trial court states,

> [I]f the Board had followed proper procedure in the instant matter, and if [Barksdale] had been given the opportunity to follow the Board's internal process, jurisdiction on appeal would lie with the Commonwealth Court. However, in this case, [the] Board procedure was not followed, and [Barksdale] was never given a determination or decision to contest within the Board's internal process. [Barksdale] was simply placed in limbo past his maximum incarceration date.

Trial Court Opinion, 6/10/14, at 8.

At the outset, we recognize that the Board has the exclusive power "[t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole" criminal defendants sentenced to a term of imprisonment of at least two years. 61 Pa.C.S.A. § 6132(a)(1)(i); *Fross v. Cnty. Of Allegheny*, 20 A.3d 1193, 1196 n.3 (Pa. 2011). A criminal defendant may appeal the Board's decision within thirty days of the Board's order. 61 Pa.C.S.A. § 6113(d)(1). The appeal initially proceeds before three members of the Board. *Id.* Once a criminal defendant exhausts all of his administrative remedies before the Board, he is entitled to judicial appellate review of an order of the Board. *Com., Dep't of Corr. v. Reese*, 774 A.2d

1255, 1260 (Pa. Super. 2001). Such appeals are within the exclusive jurisdiction of the Commonwealth Court. 42 Pa.C.S.A. § 763(a).

Habeas corpus is a writ "used to test the legality of an arrest or commitment[.]" BLACK'S LAW DICTIONARY, habeas corpus (10th ed. 2014); *see also Commonwealth v. DiVentura*, 734 A.2d 397, 398 (Pa. Super. 1999) ("habeas corpus is a civil remedy which lies solely for commitments under criminal process"). "Habeas corpus is an extraordinary remedy and may only be invoked when other remedies in the ordinary course have been exhausted or are not available." *Joseph v. Glunt*, 96 A.3d 365, 369 (Pa. Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 787 (Pa. 2014). Jurisdiction of a habeas corpus proceeding is in the Court of Common Pleas. *Reese*, 774 A.2d at 1261.

The question of the trial court's jurisdiction therefore depends upon whether Barksdale had a remedy other than habeas corpus to challenge his continued confinement beyond his maximum release date for his violations of parole. We are constrained to agree with the Board that Barksdale could have appealed the Board's June 25 notice placing him in "when available" status. This designation is reviewable through the administrative channels of the Board's appeals process and subject to further review, if necessary, by the Commonwealth Court. *See, e.g., Serrano v. Pennsylvania Bd. of Prob. & Parole*, 672 A.2d 425, 427 (Pa. Commw. 1996), *appeal denied*, 682 A.2d 312 (Pa. 1996); *Lawrence v. Com., Pennsylvania Bd. of Prob.*

*& Parole*, 456 A.2d 1154, 1155 (Pa. Commw. 1983). According to the Board's records, Barksdale became available on January 24, 2013, six months prior to his placement in "when available" status by the June 25 notice. Motion To Dismiss Petition for Writ of Habeas Corpus, 11/8/13, at Exhibit I. At the time of the issuance of the June 25 notice, Barksdale was not serving any other sentence. Thus, he could have contested the "when available" designation, asserting that a delay in the commencement of his sentence would keep him incarcerated beyond his stated maximum release date.

Barksdale asserts that this Court's decision in *Reese* compels a finding that the trial court had jurisdiction to grant him habeas corpus relief. Barksdale's Brief at 10. *Reese* involved two petitions for habeas corpus filed by two state prisoners, Emmitt Reese ("Reese") and Scott Richart ("Richart"), both of whom were being detained in prison beyond their maximum release date. The pertinent facts relating to Reese's petition were as follows. On August 17, 1984, Reese was sentenced to two years and ten months to ten years of incarceration, effective May 17, 1987, for his conviction of robbery and related charges. The Board paroled Reese on December 28, 1990, at which time his maximum release date was May 17, 1997. The Board recommitted Reese as a technical parole violator on February 10, 1992, and recalculated his maximum release date as July 30, 1997. He returned to state prison in 1992 and 1993 as a technical parole

violator, and on August 15, 1994, the Board recalculated his maximum release date as October 30, 1998. *Id.* at 1257.

On September 29, 1998, Reese was arrested on new criminal charges, following which the Board issued a warrant to detain Reese, and advised Reese that his maximum sentence would be extended. On February 24, 1999, Reese filed a petition for review in the Commonwealth Court, alleging that he was being held beyond his maximum release date and sought discharge. Reese further asserted that the Board exceeded its authority by extending his maximum sentence from May 17, 1997 to October 30, 1998.[1]
*Id.*

The Commonwealth Court transferred the case to the Allegheny County Court of Common Pleas on March 31, 1999. On May 27, 1999, the Court of Common Pleas ordered Reese's discharge from custody based upon the expiration of his maximum release date on October 30, 1998 with no additional violations that had extended that sentence. *Id.* at 1257-58.

On June 17, 1999, Reese was convicted of the pending criminal charges and sentenced to ten to twenty months of incarceration, with credit for time served. The Board issued a warrant to detain Reese that same day, advising the Department of Corrections and Reese that Reese's maximum

---

[1] On appeal, this Court found this issue waived based upon Reese's failure to timely appeal the Board's recalculation of his maximum release date before the Board, as required. *Reese*, 774 A.2d at 1262.

sentence would likely be extended because of his new conviction. *Id.* at 1258.

On June 23, 1999, the Department of Corrections filed a motion for reconsideration of the trial court's May 27 order releasing Reese from custody. The trial court vacated its order pending a decision on the motion to reconsider. On July 7, 1999, following a hearing, the trial court again granted Reese's habeas petition and ordered his release forthwith. The Department of Corrections appealed that decision, challenging, in relevant part, the trial court's jurisdiction over the matter. *Id.* On appeal, we found that the trial court had jurisdiction to decide the habeas corpus petition. *Id.* at 1261.

The key difference between the circumstances of *Reese* and the case at bar is that at the time Reese was being held on the Board's detainer, there was no Board order for him to have appealed through administrative channels. There was no revocation hearing held and no decision recommitting Reese to prison for his parole violation. Unlike Reese, Barksdale had a final, appealable order recommitting him for a parole violation to twelve months of backtime and placing him in "when available" status. He could have (and should have) appealed that decision to the

Board, removing this case from the ambit of habeas corpus.[2]  *See Joseph*,

96 A.3d at 369.

Order vacated.  Jurisdiction relinquished.

Musmanno, J. joins the Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2015

---

[2]  We understand why the trial court ruled as it did.  The Board did not provide an explanation for its actions at the hearing on Barksdale's habeas petition, and even after the trial court stated that it would entertain the Board's arguments and consider vacating its order, the Board filed an appeal to this Court despite the trial court scheduling a hearing on the Board's motion.  Nonetheless, as Barksdale had an alternative means for relief, the trial court lacked jurisdiction to decide the Petition.