J-S12041-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA EX REL. THEODORE W. SCHELL SR., | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| MICHAEL WENEROWICZ, SUPERINTENDENT, SCI GRATERFORD, ET AL., JACK J. WHELAN, ESQUIRE, DELAWARE COUNTY DISTRICT ATTORNEY, | : : : : : : : | |
| APPEAL OF: THEODORE W. SCHELL, SR. | : : | No.  1272 EDA 2015 |

Appeal from the Order Dated March 31, 2015,
in the Court of Common Pleas of Delaware County,
Civil Division, at No(s): 2013-0004380

BEFORE:    MUNDY, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED FEBRUARY 18, 2016**

Theodore W. Schell, Sr. (Schell) appeals *pro se* from an order denying his petition for writ of *habeas corpus ad subjiciendum*.  We affirm.

The trial court summarized the background underlying this matter as follows.

> [Schell] was convicted by a jury of two counts each of murder in the first degree, aggravated assault, recklessly endangering another person, as well as one count of possessing an instrument of crime on January 30, 1976.  A jury found [Schell] guilty of the shooting deaths of his ex-wife's parents. Following the trial, [Schell] was sentenced to [consecutive] terms of life imprisonment for the first[-]degree murder convictions [] on September 14, 1977.  A direct appeal was filed to the Superior Court on October 6, 1977 and on June 1, 1979, the Superior Court affirmed the judgment of sentence after finding that [Schell] had failed to preserve any of the issues for appellate review. ***Commonwealth v. Schell***, [] 405 A.2d 330

_____

*Retired Senior Judge assigned to the Superior Court.

([Pa. Super.] 1979). Thereafter, Schell filed a petition under the Post-Conviction Hearing Act (hereinafter referred to as "PCHA") on March 27, 1981. On April 18, 1983, the PCHA Court denied relief, but granted [Schell] the right to file an appeal *nunc pro tunc*. [Schell] filed his appeal, and the Superior Court affirmed his judgment of sentence. **Commonwealth v. S[c]hell**, 503 A.2d 51 (Pa. Super. 1985) (unpublished memorandum). The Pennsylvania Supreme Court denied allowance of appeal on December 2, 1986.

Several petitions under the Post-Conviction Relief Act (hereinafter referred to as "PCRA") followed[, …. which were, a]ccording to this court's calculations, his fourth and fifth overall. After a review of the case, this court denied these petitions. The Superior Court affirmed both of these denials. [Schell] then filed a [p]etition for [w]rit of *[h]abeas [c]orpus ad subjiciendum* on May 3, 2013. On April 14, 2014, he filed an amended petition. Following another thorough review of the record in this case, the court dismissed [Schell's] petition on March 31, 2015. A motion for reconsideration was denied on April 15, 2015. This [timely-filed] appeal followed.

Trial Court Opinion, 10/15/2015, at 1-2 (footnotes and some citations omitted).[1]

We now try to discern Schell's arguments on appeal. As is common with *pro se* prisoner litigation of this type, the arguments presented to us are confusing and inartfully-stated. Schell co-mingles numerous legal principles in a lengthy dialogue about his conviction and sentence.

We first consider Schell's claims regarding his sentencing order. Schell's Brief at 1-9. "Schell does not deny that he was found guilty by the

---

[1] The trial court did not order Schell to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); however, Schell did file a statement, which was essentially a copy of his writ of *habeas corpus ad subjiciendum*.

jury of murder in the first degree … [and] the Commonwealth was not seeking the death sentence in this case, but [was] rather seeking consecutive life sentences." Schell's Brief at 2.  However, Schell contends that during a closing argument, the Commonwealth stated that a life sentence was only 7½ to 15 years' incarceration, and that he would be eligible for parole. *Id*.  Schell argues that because he has served that time, he is entitled to be released from prison.  Moreover, Schell claims that the document relied upon by the trial court, a court commitment document stating that Schell was sentenced to life in prison, is invalid as a sentencing order.

Initially, we note that the Pennsylvania Supreme Court, albeit in a *per curiam* opinion, has held that a claim that a defendant's sentence is illegal due to the inability of the DOC to "produce a written sentencing order related to [his] judgment of sentence" constitutes a claim legitimately sounding in *habeas corpus*. **Brown v. Penna. Dept. of Corr.**, [] 81 A.3d 814, 815 ([Pa.] 2013) (*per curiam*) (citing **Commonwealth ex rel. Bryant v. Hendrick**, [] 280 A.2d 110, 112 ([Pa.] 1971); **Warren v. DOC**, [] 616 A.2d 140, 142 ([Pa. Cmwlth.] 1992) ("An application for a writ of *habeas corpus* requests the applicant's release from prison.")).

Our standard of review in this context is axiomatic:

The ancient writ of *habeas corpus* is inherited from the common law, referred to by Sir William Blackstone as the most celebrated writ in the English law. The writ lies to secure the immediate release of one who has been detained unlawfully, in violation of due process. [T]raditionally, the writ has functioned only to test the legality of the petitioner's detention.

> *Commonwealth v. Wolfe*, [] 605 A.2d 1271, 1272–73 ([Pa. Super.] 1992) (internal citations omitted). "Under Pennsylvania statute, *habeas corpus* is a civil remedy [that] lies solely for commitments under criminal process." *Commonwealth v. McNeil*, [] 665 A.2d 1247, 1249–50 ([Pa. Super.] 1995) (citing *Wolfe*, 605 A.2d at 1273). "*Habeas corpus* is an extraordinary remedy and may only be invoked when other remedies in the ordinary course have been exhausted or are not available." *Id*. (citing *Commonwealth ex rel. Kennedy v. Myers*, [] 143 A.2d 660, 661 ([Pa.] 1958)). "Our standard of review of a trial court's order denying a petition for [a] writ of habeas corpus is limited to [an] abuse of discretion." *Rivera v. Penna. Dep't of Corrs.*, 837 A.2d 525, 528 (Pa. Super. 2003).

*Joseph v. Glunt*, 96 A.3d 365, 368-69 (Pa. Super. 2014).

In response to Schell's arguments, the trial court offered the following:

> This court has reviewed [Schell's] record including the notes of testimony from [Schell's] sentencing hearing on September 14, 1977, the previous opinions authored by the sentencing judge and those of the Superior Court, and the court commitment order dated September 14, 1977. They all reveal that [Schell] was sentenced to two consecutive life sentences by the Honorable Robert A. Wright. While [Schell] maintains that a sentencing order has not been provided to the DOC to reflect this sentence, the record clearly reflects his sentence, and he is not entitled to relief on this claim.

Trial Court Opinion, 10/15/2015, at 4.

The trial court's conclusion is consistent with the holding in *Joseph*,

wherein Joseph set forth similar arguments.

> [Joseph] has cited no apposite legal authorities demonstrating that the undisputed record of his judgment of sentence maintained by the sentencing court constitutes insufficient authority for his continuing detention. *See* T.C.O. at 2 ("Through use of the Common Pleas Case Management System, the [thirteen] page criminal docket of [Joseph] ... was obtained. This docket shows that [Joseph] was found guilty of First Degree Murder.... He was sentenced to life without parole

- 4 -

by ... Judge John F. Cherry."); *see also* Dauphin County Criminal Docket CP–22–CR–0001269–2009 at 6. … [C]ourts confronting this issue in the past have deemed a record of the valid imposition of a sentence as sufficient authority to maintain a prisoner's detention notwithstanding the absence of a written sentencing order[.] Both the criminal docket provided by the trial court and the transcript of the sentencing hearing confirm the imposition, and legitimacy, of [Joseph's] sentence.

Based upon the foregoing, we discern no merit in [Joseph's] arguments. The trial court properly reviewed the record and discovered a valid sentencing order contained therein. **Moreover, the trial court correctly concluded that, even in the absence of a written sentencing order, the DOC had continuing authority to detain** [**Joseph**].

*Joseph*, 96 A.3d at 372 (emphasis added). Thus, we conclude the trial court did not abuse its discretion in denying Schell's petition for writ of *habeas corpus* as the DOC has continuing authority to detain him because he was sentenced to life in prison.

Schell next sets forth a series of arguments about the evidence presented against him at trial. Schell's Brief at 14-24. For example, he argues that the Commonwealth questioned a witness improperly; that the Commonwealth presented "false" testimony; and, that the Commonwealth suppressed forensic evidence.

It is well-settled that the PCRA is intended to be the sole means of achieving post-conviction relief. Unless the PCRA could not provide for a potential remedy, the PCRA statute subsumes the writ of *habeas corpus*. Issues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a *habeas corpus* petition.

***Commonwealth v. Taylor***, 65 A.3d 462, 465-66 (Pa. Super. 2013) (citations omitted).

Schell's aforementioned contentions had remedies available from PCRA proceedings. Accordingly, those claims are subject to the jurisdictional time-bar of the PCRA.

> Generally, a PCRA petition must be filed within one year from the date a judgment becomes final.[2] There are three exceptions to this time requirement: (1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right. When a petitioner alleges and proves that one of these exceptions is met, the petition will be considered timely. A PCRA petition invoking one of these exceptions must be filed within 60 days of the date the claims could have been presented. The timeliness requirements of the PCRA are jurisdictional in nature and, accordingly, a PCRA court cannot hear untimely petitions.

***Commonwealth v. Brandon***, 51 A.3d 231, 233-34 (Pa. Super. 2012) (footnote added; citations and quotation marks omitted).

On December 2, 1986, our Supreme Court denied Schell's petition for allowance of appeal, and Schell did not file a writ of *certiorari* to the United

---

[2] "PCRA petitioners whose judgment of sentence became final prior to the effective date of the amendments to the PCRA ha[d] until January 17, 1997 to file a timely [petition]." ***Commonwealth v. Baldwin***, 789 A.2d 728, 730 (Pa. Super. 2001). As discussed *infra*, Appellant's judgment of sentence became final prior to 1997; thus, Appellant had the benefit of this additional time to file timely his first PCRA petition.

States Supreme Court. Accordingly, Appellant had until January 17, 1997 to file timely a PCRA petition.[3]

The instant petition, filed on May 3, 2013, is patently untimely. The PCRA court had no jurisdiction to entertain Appellant's petition unless he pled and offered proof of one or more of the three statutory exceptions to the time bar. *See* 42 Pa.C.S. § 9545(b)(1). Appellant failed to do so. Accordingly, the PCRA court properly dismissed his petition to the extent he was raising claims with remedies available under the PCRA.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/18/2016

---

[3] Appellant did file timely his first PCRA petition, and was denied relief. Subsequently, Appellant filed several untimely petitions prior to filing the instant petition for writ of *habeas corpus*.