J-S11012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BOBBY STOKES :
:
Appellant : No. 1160 EDA 2017
:

Appeal from the PCRA Order March 7, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0217321-1982

BEFORE: OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                 **FILED JUNE 07, 2018**

Bobby Stokes appeals from the order entered March 7, 2017, in the Philadelphia County Court of Common Pleas, denying his petition for writ of *habeas corpus*.[1] Stokes seeks relief from the sentence of life imprisonment imposed on May 31, 1983, following his jury conviction of first-degree murder, criminal conspiracy, and possessing an instrument of crime ("PIC")[2] in connection with the September 1981 shooting death of Fletcher Oglesby. On appeal, Stokes argues (1) *habeas corpus* relief is the proper remedy for his claim, and (2) the trial court erred in finding he was not entitled to relief based

---

[1] *See* 42 Pa.C.S. §§ 6501-6505.

[2] *See* 18 Pa.C.S. § 2502(a), 903, and 907, respectively.

on his assertion that no valid judgment order exists authorizing his continued imprisonment. For the reasons below, we affirm.

The relevant procedural history underlying this appeal is as follows. In June of 1982, Stokes was convicted of first-degree murder and related charges, and, on May 31, 1983, sentenced to a term of life imprisonment for the murder conviction, a consecutive term of two and one-half to five years' incarceration for criminal conspiracy, and a concurrent term of one to two years' incarceration for PIC. His judgment of sentence was affirmed by a panel of this Court in an unpublished memorandum decision filed on March 15, 1985. *See Commonwealth v. Stokes*, 494 A.2d 486 (Pa. Super. 1985) (unpublished memorandum). Stokes did not seek further review in the Pennsylvania Supreme Court.

On March 15, 2006, Stokes filed a *pro se* PCRA petition,[3] his first. The PCRA court dismissed the petition as untimely filed without first appointing counsel. On appeal, a panel of this Court vacated the dismissal order and remanded for the appointment of counsel. *See Commonwealth v. Stokes*, 953 A.2d 606 (Pa. Super. 2008) (unpublished memorandum). Counsel was subsequently appointed, and filed a *Turner/Finley*[4] "no merit" letter and petition to withdraw. Thereafter, on March 27, 2009, the PCRA court dismissed the petition and permitted counsel to withdraw.

_____

[3] *See* Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

[4] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On January 30, 2014, Stokes filed the present petition for writ of *habeas corpus* in the civil division of the common pleas court. The petition was transferred to the criminal division on February 12, 2014. While that petition was pending, Stokes filed a second, *pro se* PCRA petition on April 25, 2014, claiming the Commonwealth withheld the fact that one of its witnesses was promised a favorable deal in exchange for his purported false testimony against Stokes. Thereafter, Stokes filed two additional supplemental *habeas* petitions on May 22, 2014, and September 10, 2014, respectively. Counsel entered his appearance in May of 2015, and on August 26, 2015, filed a memorandum of law in support of Stokes' *habeas corpus* petition.[5] After the Commonwealth filed a motion to dismiss, the trial court sent Stokes notice of its intent to dismiss the petition, as meritless and untimely, without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Stokes filed a counseled objection to the court's Rule 907 notice, insisting, *inter alia*, that he was seeking *habeas corpus* relief, which does not have a limitations period. Thereafter, on March 7, 2017, the trial court entered an order dismissing

_____

[5] Counsel's memorandum addressed only the issue raised in the *habeas* petition, not the second PCRA petition. In fact, the PCRA petition was not addressed by Stokes or the court in any subsequent filing. Accordingly, that document is not before us in this appeal.

Stokes' petition "based upon a lack of merit[.]" Order, 3/7/2017 (capitalization omitted). This timely appeal followed.[6]

Preliminarily, we note the trial court correctly reviewed Stokes' claim under the *habeas corpus* statute. **See** Trial Court Opinion, 5/17/2017, at 4. Although the PCRA explicitly states it "shall be the sole means of obtaining collateral relief,"[7] "the privilege of the writ of *habeas corpus* has not been suspended in this Commonwealth" and is available "for the rare instance where the PCRA offers no remedy." **Commonwealth v. West**, 938 A.2d 1034, 1043 (Pa. 2007). Here, despite the court's initial indication that Stokes petition was untimely filed under the PCRA, it did not dismiss the petition on that basis. Rather, the court recognized "[a] claim that a defendant's sentence is illegal due to the inability of the Department of Corrections to 'produce a written sentencing order related to [his] judgment of sentence' constitutes a claim legitimately sounding in *habeas corpus*." Trial Court Opinion, 5/17/2017, at 4, *quoting* **Joseph v. Glunt**, 96 A.3d 365, 368 (Pa. Super. 2014), *appeal denied*, 101 A.3d 787 (Pa. 2014). Therefore, Stokes' first issue is moot, since the trial court did review his claim under the *habeas* statute.

─────────────────────────

[6] On April 11, 2017, the trial court ordered Stokes to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Stokes complied with the court's directive, and filed a concise statement on April 27, 2017.

[7] 42 Pa.C.S. § 9542.

Next, Stokes argues he should be discharged from incarceration because there is no valid judgment order "lodged [at] the prison to which [he] is assigned." Stokes' Brief at 12. He insists a signed judgment order, which designates the sentences imposed on each count of his conviction, is necessary to allow "the prison to maintain custody of" him. *Id.* When he attempted to obtain a copy of his judgment order, Stokes was unable to do so. Moreover, he maintains the transcript from both his trial and sentencing hearing "are lost as well." *Id.* Accordingly, he argues, "in the absence of a written Judgment Order judicial authority for [his] continued confinement … is lacking and he must be discharged." *Id.* at 16.

In considering an order denying a petition for writ of *habeas corpus*, we must bear in mind the following:

> Our standard of review of a trial court's order denying a petition for writ of *habeas corpus* is limited to abuse of discretion. ***See Commonwealth, Dep't of Corrections v. Reese***, 774 A.2d 1255, 1261 (Pa. Super. 2001). Thus, we may reverse the court's order where the court has misapplied the law or exercised its discretion in a manner lacking reason. ***See Lachat v. Hinchcliffe***, 769 A.2d 481, 487 (Pa. Super. 2001) (defining abuse of discretion). As in all matters on appeal, the appellant bears the burden of persuasion to demonstrate his entitlement to the relief he requests. ***See Miller v. Miller***, 744 A.2d 778, 788 (Pa. Super. 1999).
>
> \* \* \* \*
>
> Accordingly, the writ may be used only to extricate a petitioner from illegal confinement or to secure relief from conditions of confinement that constitute cruel and unusual punishment.

- 5 -

*Rivera v. Pennsylvania Dep't of Corr.*, 837 A.2d 525, 528 (Pa. Super. 2003), *appeal denied*, 857 A.2d 680 (Pa. 2004).

Pennsylvania's Sentencing Code requires that, upon the commitment of an inmate to prison, the sheriff "shall provide to the institution's record officer[, *inter alia*, a] copy of the sentencing order[.]" 42 Pa.C.S. § 9764(a)(8). In *Glunt*, *supra*, a panel of this Court considered a claim nearly identical to the one before us.

In that case, the defendant sought *habeas corpus* relief when, upon his request, the Department of Corrections ("DOC") was unable to provide a copy of his sentencing order. *See Glunt*, *supra*, 96 A.3d at 367. However, the trial court dismissed the defendant's *habeas* petition after reviewing the transcript from his sentencing hearing and his criminal docket. The court determined "even in the absence of a sentencing order, the existent record authorized [his] incarceration[.]" *Id.* at 368. On appeal, a panel of this Court agreed.

First, relying upon an unpublished decision of the Commonwealth Court,[8] the panel found Section 9764 does not pertain to the DOC's authority to detain a prisoner, nor provide "an affirmative obligation on the part of the DOC to maintain and produce the documents enumerated in subsection 9764(a) upon the request of the incarcerated person." *Glunt*, *supra*, 96 A.3d

---

[8] *See Travis v. Giroux*, 83 A.3d 525 (Pa. Cmwlth. 2013) (unpublished memorandum), *appeal denied*, 91 A.d 1240 (Pa. 2014).

at 371. The panel also observed the statute does not provide a prisoner with "any remedy for deviation from the procedures prescribed within." ***Id.***

Second, the ***Glunt*** Court concluded the "undisputed record" of the defendant's judgment of sentence, which included both the docket entries and the transcript of the sentencing hearing, "confirm[ed] the imposition, and legitimacy, of [the defendant's] sentence." ***Id.*** at 372. The panel summarized its ruling as follows:

> The trial court properly reviewed the record and discovered a valid sentencing order contained therein. Moreover, the trial court correctly concluded that, even in the absence of a written sentencing order, the DOC had continuing authority to detain [the defendant]. We discern no abuse of discretion in the trial court's conclusion. Thus, [the defendant's] claim fails.

***Id.***

Here, relying upon ***Glunt***, the trial court concluded Stokes was entitled to no relief. The court first explained Section 9764 does not provide a remedy to an inmate when the DOC is unable to produce his sentencing order. ***See*** Trial Court Opinion, 5/17/2017, at 5-6. Second, the court found the signed docket sheets, which it attached to its opinion, "undeniably demonstrate[] there is an extant record of the valid imposition of a sentence in this case[.]" ***Id.*** at 6.

Stokes, however, argues the docket sheets attached to the court's opinion are insufficient alone to warrant his continued detention under ***Glunt***. ***See*** Stokes' Brief at 14-15. He emphasizes the ***Glunt*** Court found the **combination** of the docket entries and the defendant's sentencing transcript

was sufficient to demonstrate a valid detention absent a signed sentencing order. *See id.* at 14. Because his transcript is missing, Stokes contends the docket entries alone do not suffice. We disagree.

First, the trial court did not rely upon computerized docket entries that simply list the relevant filings and hearing dates. Rather, here, the court attached to its opinion the **docket sheets** for each charge. *See* Trial Court Opinion, 5/17/2017, at Exhibits 1-2. These documents include handwritten details of the trial and sentencing proceedings, and are signed by the presiding judge. Therefore, we agree with the conclusion of the trial court that signed docket sheets provide authority for his detention.[9] Second, as noted above, even if there was no other documents supporting Glunt's detention, Section 9764 does not provide him with the remedy of discharge.

Accordingly, we find no abuse of discretion on the part of the trial court in denying Stokes' petition for writ of *habeas corpus*.

Order affirmed.

_____

[9] We also find no support in **Glunt** for Stokes' contention that **only** a combination of a docket entry and a sentencing transcript will suffice to demonstrate the validity of an inmate's detention when a sentencing order is unavailable. *See Glunt*, *supra*, 96 A.3d at 372.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/18