J. S26019/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTIN MICHELE ZIMMERMAN, | : | |
| | : | |
| APPELLANT | : | |
| | : | No. 1591 MDA 2016 |

Appeal from the Judgment of Sentence May 18, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000356-2016

BEFORE: BOWES, J., DUBOW, J., and FITZGERALD, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 31, 2017**

Appellant, Kristin Michele Zimmerman, appeals from the May 18, 2016 Judgment of Sentence entered in the Lebanon County Court of Common Pleas sentencing her to a term of eleven months to three years of imprisonment. On appeal, Appellant challenges the discretionary aspects of the trial court's sentence. After careful review, we affirm on the basis of the trial court's Opinion.

The trial court's Pa.R.A.P. 1925(a) Opinion includes a thorough and complete narrative of the facts and procedural history of this case, which we adopt for purposes of this appeal. **See** Trial Court Opinion, filed 9/13/16, at

_____

[*] Former Justice specially assigned to the Superior Court.

1-5. While we will not go into exhaustive detail here, some of the relevant facts are as follows.

Appellant has repeatedly appeared before the Honorable Bradford H. Charles "on charges that were largely drug-related." *Id.* at 1. Historically, Judge Charles has permitted Appellant to seek drug and alcohol treatment in lieu of incarceration. However, Appellant has violated the terms of her probation or parole on at least ten occasions, and continues to be arrested on new charges. *Id.* at 2, 4.

On April 6, 2016, Appellant entered an open guilty plea to one count of Retail Theft graded as a third-degree felony.[1] On May 18, 2016, Appellant appeared before Judge Charles for sentencing, and "once again asked for inpatient treatment in lieu of jail." *Id.* at 3. In response, Judge Charles reminded Appellant of her numerous prior appearances and requests for leniency. He then imposed a sentence of nine months to three years of imprisonment, which was within the standard range of the sentencing guidelines.

In response, Appellant told Judge Charles to "[h]ave a great fucking day." *Id.* at 4; N.T., 5/18/16, at 12.

Judge Charles then immediately vacated Appellant's sentence, and imposed a sentence of eleven months to three years of imprisonment, which remained within the standard range of the sentencing guidelines. The trial

---

[1] 18 Pa.C.S. § 3929(a)(1).

court stated that Appellant's use of an expletive towards the court evidenced her "extreme lack of remorse" and provided further proof that she considered the proceedings to be "a game to her." Trial Court Opinion at 4.

Appellant filed a Post-Sentence Motion, which the trial court denied.

On September 23, 2016, Appellant timely filed the instant appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single issue, "[w]hether the [trial court] improperly modified [Appellant's] sentence and imposed a harsher penalty as a result of her use of profanity in the [c]ourtroom?" Appellant's Brief at 4.

We begin by noting that Judge Charles was authorized to vacate the "oral sentence" he stated on the record and resentence Appellant to a longer term. *See* 42 Pa.C.S. § 5505 (authorizing a court to "modify or rescind any order within 30 days after its entry"). *See also Commonwealth v. Unger*, 462 A.2d 259, 260-61 (Pa. Super. 1983) (holding that where a trial judge has not yet signed a sentencing order and entered it in the record, and the defendant is still present in the courtroom, no sentence has been "imposed" yet, and the trial court can therefore vacate the "initial pronouncement" and impose an increased sentence without placing the defendant in double jeopardy).

Appellant does not dispute that the trial court was empowered to "change its mind" about the sentence imposed. Appellant's Brief at 10.

Instead, Appellant avers that her decision to tell the court to "[h]ave a great fucking day" did not provide the sentencing court with any "new information . . . that would warrant a penalty increase." *Id.* Therefore, Appellant argues, the sentence ultimately imposed by the trial court must have been the result of "prejudice toward her based on past interactions." *Id.* at 11.

Appellant's claim, that the trial court imposed a sentence based on prejudice, is a challenge to the discretionary aspects of her sentence. *See Commonwealth v. Derry*, 150 A.3d 987, 991, 995 (Pa. Super. 2016). A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, Appellant filed a timely Post-Sentence Motion and Notice of Appeal. Although Appellant did not include in her Brief a separate Rule 2119(f) Statement, the Commonwealth has not objected to this defect

and, thus, we decline to find that the defect is fatal.[2] Finally, a claim that the trial court imposed a harsher sentence as a result of improper prejudice raises a substantial question. **See Derry**, 150 A.3d at 995 (noting that "it is axiomatic that an abuse of a sentencing court's discretion may be demonstrated where the court exercised its judgment for reasons of partiality, prejudice, bias or ill-will" and that such a claim, therefore, raises a substantial question (quotation and citation omitted)).

Accordingly, we turn to the merits of Appellant's claim, mindful of our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

Judge Charles has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. After a careful review of the parties' arguments and the record, we affirm on the basis of that Opinion, which clearly finds that the

---

[2] This Court "may overlook an appellant's failure to comply with Rule 2119(f) where the [Commonwealth] fails to object to the omission and a substantial question is obvious from the appellant's brief." **Commonwealth v. Kneller**, 999 A.2d 608, 614 (Pa. Super. 2010).

trial court increased Appellant's minimum sentence after her "outburst of profanity" because it evidenced a "blatant disrespect" toward the trial court, a lack of remorse, and additional evidence that Appellant's request for treatment was disingenuous "gamesmanship[.]" Trial Court Opinion at 8. We agree.

The parties are directed to attach a copy of the trial court's September 13, 2016 Opinion to all future filings.

Judgment of Sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017

IN THE COURT OF COMMON PLEAS LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF        :      NO. CP-38-CR-356-2016
PENNSYLVANIA

    v.

KRISTIN MICHELE ZIMMERMAN   :

APPEARANCES

Jared Hinsey, Esquire       For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Elizabeth Judd, Esquire      For Kristin Michele Zimmerman

OPINION BY CHARLES, J., September 13, 2016

Is a Judge empowered to alter the sentence of a defendant who directs the "f-word" at him at the end of a sentencing hearing? Kristin Michele Zimmerman (hereafter "DEFENDANT") argues that we are not. For reasons we will articulate in more detail below, we disagree.

I.    FACTS

DEFENDANT in this case is well known to the Court. For years, she has appeared in court on charges that were largely drug-related. On practically every occasion she has appeared in Court, DEFENDANT proffered impassioned pleas for mercy based upon the needs of her children and her self-proclaimed desire to obtain drug and alcohol treatment.

1

On multiple past occasions, this Court acquiesced to the requests of DEFENDANT. We permitted her in lieu of incarceration to spend time at treatment facilities sponsored by Bowling Green, Gaudenzia and White Deer Run. We also afforded her with countless opportunities for outpatient counseling. On more than one occasion, this Jurist imposed sentences upon DEFENDANT that focused upon opportunity and rehabilitation instead of retribution.

In response to the opportunities afforded by the Court, DEFENDANT responded as follows:

- By lying on multiple occasions to her probation and parole officers;
- By failing to report as directed by her probation and parole officers;
- By failing to report for mandatory drug testing;
- By attempting to pass false urine as her own;
- By committing additional crimes; and
- By continuing to use heroin and other drugs, even while pregnant.

On May 18, 2016, DEFENDANT was brought before this Court as a result of Driving Under the Influence and yet another Retail Theft offense. According to the Affidavit of Probable Cause submitted to the Court at the time of sentencing, DEFENDANT stole $515 worth of DVDs from Wal-Mart with the intent to sell those DVDs in order to raise money to purchase heroin. The DUI occurred when DEFENDANT drove while under the influence of opiates and became involved in a one-vehicle accident.

2

Because of DEFENDANT's prior history, her standard sentencing range permitted the Court to incarcerate her for up to 12 months.

During her pre-sentence interview, DEFENDANT was asked what she likes to do in her free time. She responded: "Besides getting high?" After being advised that her response was not appropriate, she indicated that she "did not remember" what she did for fun because she "spends all of her time and money getting high."

When DEFENDANT appeared in court for sentencing on May 18, 2016, we stated to her attorney:

> What you may not remember or that you may not know because you weren't with her at the time is how much I have attempted to work with her to get her help in the past. I remember Kristin Michele Zimmerman. I don't remember most people that stand before me. I remember her as a young lady that had a lot of potential. And just paid lip service to the need for treatment and used it as a game. I am done. I am done. You know, fool me once, shame on you. Fool me twice, okay. I'll take some of the blame, but still shame on you. Fool me three or four or five times, it's not happening.

(N.T. 3). Despite this rather gruff language, DEFENDANT once again asked for inpatient treatment in lieu of jail. She stated:

> I want an opportunity to go somewhere that is spiritually based. I was contemplating the U-Turn For Christ or the Salvation Army....The problem I had with Guadenzia [a prior treatment opportunity] is that there was no spiritual foundation there. There was nothing to build my house on. So if I didn't have a strong foundation, my house was bound to fail. I've shown that I can be clean for periods of time. Yes, I've stumbled. I've fallen. A lot of people have. I am not using rehab as a game....
>
> It's not a game. It's my life. My kids are growing up without me. I'm so tired. There's nothing for me in Lebanon County. There's not. There's no treatment. I do everything I can,

3

Renaissance, twelve steps, NA. I'm completely at your mercy.
I have an open plea.

(N.T. 5-6).

Before imposing sentence, we reminded DEFENDANT that she had violated the terms of probation or parole on ten prior occasions. We also reminded her of the flippant comments she made to the presentence investigation interviewer and stated: "And that's from someone who has four children and has on multiple occasions come into court and tried to convince me that she deserves a break so that she can raise her children and be with her children." (N.T. 7).

Following the exchanges outlined above, we initially imposed a sentence of 9 months to 3 years in a state correctional facility. We declared DEFENDANT to be RRRI eligible. After wishing DEFENDANT "good luck," she responded "Have a great fucking day." We then immediately changed our sentence to require that DEFENDANT spend 11 months in prison with an RRRI minimum of 8 months and 7 days. (N.T. 12). In response to a question from defense counsel about why we changed our sentence, the Court cited the expletive uttered by DEFENDANT toward the Court and we indicated that her comments reflected an extreme lack of remorse and additional evidence that "this is a game to her." We also reminded everyone that the revised sentence we imposed remained within the standard sentencing range applicable to DEFENDANT's charge. (N.T. 13).

DEFENDANT has appealed our sentence. The sole argument proffered by DEFENDANT in her Post-Sentence Motion is that we lacked

the authority to modify the sentence we had originally imposed. We issue this Opinion in support of our belief that we did possess the authority to do exactly what we did at the time of sentencing.

## II. DISCUSSION

As a general proposition, sentencing of a criminal defendant is determined at the discretion of the Trial Judge. See, e.g. *Commonwealth v. Moury*, 992 A.2d 162 (Pa.Super. 2010). "The rationale behind such broad discretion and concomitantly deferential standard of appeal review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). As a general proposition, when a Court's sentence is within the standard range prescribed by the Pennsylvania Sentencing Guidelines, it will not generally be deemed excessive or unreasonable. See *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995). In fact, so-called "standard range sentences" will only rarely be overturned on appeal. See, generally, *Commonwealth v. Wallace*, 2015 WL6114473 (Pa.Super. 2015); *Commonwealth v. Moury*, supra; *Commonwealth v. Wright*, 600 A.2d 1289 (Pa.Super. 1991). In fact, when a standard range sentence is imposed, Pennsylvania's Sentencing Code does not even require a judge to articulate the reasons for the sentence imposed. See 42 Pa.C.S.A. § 9721; *Commonwealth v. Wright*, supra.

5

In this case, we imposed a sentence upon DEFENDANT that was within the standard sentencing range. In fact, the sentence was not even at the very top of the standard sentencing range. Moreover, we declared DEFENDANT to be eligible for the RRRI program that will enable her to obtain a further reduction of her minimum sentence. Had we originally imposed the sentence we ended up imposing, DEFENDANT would not even have an argument that could be proffered on appeal. However, because we increased DEFENDANT's sentence by two months following her profane comment in court, DEFENDANT argues on appeal that we erred.

At common law, a Court retains the authority to "change its mind" regarding a sentence provided that the change is articulated promptly. See, e.g. *Commonwealth v. Mackley*, 380 Pa. 70 (Pa. 1955). This authority was codified within Pennsylvania's Judiciary Code in 1976. That statute states:

### Modification of Orders

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.[1]

Section 5505 has been invoked in cases involving sentencing. See, e.g. *Commonwealth v. Fleming*, 480 A.2d 1214 (Pa.Super. 1984); *Commonwealth v. Kotz*, 601 A.2d 811 (Pa.Super. 1992).

---

[1] This statute was patterned off of an earlier law related to rehearing of cases. See former 20 Pa.C.S. § 3521.

The most analogous case to the one at bar is **Commonwealth v. Unger**, 462 A.2d 259 (Pa.Super. 1983). In **Unger**, the Defendant appeared for a sentencing hearing on January 14, 1982. At sentencing, the Court verbally imposed a sentence of 6 months to 5 years. The Defendant was thereafter told about his appellate rights. Following this colloquy, the Commonwealth asked the Court to reconsider the sentence because the Defendant had threatened the prosecuting officer. Thereafter, the Court vacated its pronounced sentence and increased the Defendant's time in prison from 6 months to 2 ½ years. The Defendant appealed, claiming that the Court exceeded its authority.

In **Unger**, the Superior Court began its analysis by stating:

> Oral statements made by the judge in passing sentence, but not incorporated in the written judgment signed by him, are no part of the judgment of sentence. **Commonwealth v. Foster**, 229 Pa.Super.Ct. 269, 271, 324 A.2d 538, 539 (1974). In addition, an "initial oral pronouncement of sentence...[is] not a 'sentence imposed" for purposes of double jeopardy." **Commonwealth v. Hodge**, 246 Pa.Super.Ct. 71, 81, 369 A.2d 815, 820 (1977). A violation of the double jeopardy clause occurs if the sentence is increased <u>after</u> the Defendant has begun serving it. **Commonwealth v. Allen**, 443 Pa. 96, 104, 277 A.2d 803, 806 (1971) (emphasis added).

*Id.* at 260. The Superior Court affirmed the Judge's "final" sentence. The Court stated:

> Only the second sentence was entered into the record and signed by the Court. Not only was the lower court's original sentence oral, but appellant had not yet left the courtroom to begin serving his sentence. We cannot say, therefore that the initial sentence was actually "imposed" and, accordingly, find that the lower court's resentencing did not place appellant in double jeopardy.

7

*Id.* at 260-61.

In this case, as in *Unger*, no written sentencing order had been signed by the Court when the "final" sentence was imposed. As in *Unger*, DEFENDANT had not even left the courtroom. Given the Court's statutory authority to modify orders within 30 days, and given the clear precedential authority articulated in *Unger*, *supra*, we conclude without hesitation that a Trial Judge has the authority to alter a sentence in the presence of the Defendant in open court in response to additional information or changed circumstances.

In this case, we freely acknowledge that we increased DEFENDANT's minimum sentence by two months because of the words she uttered in response to the Court wishing her "good luck." By using the "f-word" toward a judge in open court surrounded by dozens of spectators and others awaiting sentencing, DEFENDANT displayed blatant disrespect toward the Court and the justice system. Her statement, and the demeanor by which it was uttered, clearly communicated that DEFENDANT had no remorse for her conduct. After trying to convince the Court that her prior rehabilitation opportunities had failed because they were not faith-based and that she wanted a spiritual rehabilitation program, she turned around when we said "no" and hurled a profanity at the Court with venom and without one ounce of contrition. If we had any doubt about whether DEFENDANT was attempting to continue her "rehab instead of jail" gamesmanship, it was dispelled by her outburst of profanity.

9

A courtroom must be a place governed by decorum. If we permit courts to become arenas where shouting and profanity is encouraged, pretty soon legal proceedings will become like "debates" on CNN where surrogates for opposing viewpoints shout at and interrupt one another with impunity. No civilized system of justice could operate in such an environment. If our appellate courts were to proclaim that Trial Judges should simply sit back and take no action when f-word profanities are hurled at them in court, the first step toward courtroom chaos will have been taken.

## III. CONCLUSION

This Court possesses the statutory authority to modify Court Orders within 30 days. In this case, we altered our Court Order within seconds after the initial sentencing decision had been pronounced. We did so in the presence of DEFENDANT before she left the courtroom. We did so before the sentence was issued in writing and signed. Under Pennsylvania law, we acted within our authority to increase DEFENDANT's minimum sentence from 9 months to 11 months regardless of the reason for that decision. Nevertheless, our reason was legitimate. In order to preserve decorum inside a courtroom, Judges must have the authority to respond when individuals hurl the f-word profanity at them in open court.

We remind DEFENDANT that we increased her sentence by only two months (as compared with the two year increase that was ultimately approved in *Unger*). We remind DEFENDANT that our sentence remained in the standard sentencing guideline range. Some might observe that our

response to DEFENDANT's courtroom antics was restrained. In simple language, DEFENDANT should be reminded that our response to her use of the f-word in open court could have been far worse.